1    Alex L. Fugazzi, Esq. (Nevada Bar No. 9022)
     Michael Paretti (Nevada Bar No. 13926)
2    SNELL & WILMER L.L.P.
     3883 Howard Hughes Parkway, Suite 1100
3    Las Vegas, Nevada  89169
     Telephone:  702.784.5200
4    Facsimile:  702.784.5252
     afugazzi@swlaw.com
5    mparetti@swlaw.com

6
     *Attorneys for Defendant*
7    *Shannon Pierce*

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10

11   LATONIA SMITH,                          Case No.:    2:19-cv-00856-GMN-GWF

                    Plaintiff(s),
12
13                  -vs-                      **DEFENDANT SHANNON PIERCE'S**
                                              **SPECIAL MOTION TO DISMISS**
14   CAESARS ENTERTAINMENT                    **PURSUANT TO NRS 41.660**
     CORPORATION, a Delaware corporation;
15   PHWLV, LLC d/b/a PLANET                  **-AND-**
     HOLLYWOOD RESORT AND CASINO, a
16   Nevada limited liability company;        **MOTION TO DISMISS PURSUANT**
     SHANNON PIERCE; ETHAN THOMAS,            **TO FRCP 12(B)(6)**

17                  Defendant(s).
18

19       Defendant Shannon Pierce ("Ms. Pierce"), by and through her counsel of record, Snell &

20   Wilmer L.L.P., hereby submits this special motion to dismiss the state law claims asserted in

21   Plaintiff Latonia Smith's ("Ms. Smith") First Amended Complaint pursuant to Nevada's Anti-

22   SLAPP statute, NRS 41.660, and motion to dismiss Ms. Smith's First Amended Complaint

23   pursuant to Federal Rule of Civil Procedure 12(b)(6).

24

25

26

27

28

                                          - 1 -

These motions are based on the attached memorandum of points and authorities, the papers and pleadings on file with the Court, the Request for Judicial Notice filed concurrently herewith, and such other written or oral argument and other materials that may be presented prior to the Court's decision on this motion.

Dated: May 28, 2019.

SNELL & WILMER L.L.P.

By: _____
Alex L. Fugazzi, Esq. (NV Bar No. 9022)
Michael Paretti (NV Bar No. 13926)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

*Attorneys for Defendant Shannon Pierce*

- 2 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

The Court should dismiss Ms. Smith's state court claims under NRS 41.660, Nevada's anti-SLAPP statute. NRS 41.660 requires the Court to dismiss claims (1) that are based on a good faith communication in furtherance of a person's right to petition, such as petitioning a court, and (2) where the party asserting such claims cannot show a probability of prevailing on the merits. Both elements are satisfied here.

First, the entire basis for Ms. Smith's state court claims is that Ms. Pierce, as counsel for Caesars Entertainment Corporation and PHWLV, LLC (the "Defendant Entities"), made communications to Ms. Smith during the pendency of active litigation, distributed a confidential settlement agreement, and filed "TPOs against Ms. Smith in various locations." These are quintessential good faith communications in furtherance of Ms. Pierce's, and her clients', right to petition the courts for redress, especially when, as is the case here, those temporary protective orders are granted by a sitting Justice Court Judge.

Second, Ms. Smith cannot prevail on the merits. Because Ms. Smith's claims are based on Ms. Pierce's petitioning, Ms. Pierce is immune from liability under NRS 41.650. Ms. Smith's claims are also barred by the absolute litigation privilege, as Ms. Pierce was working solely in her capacity as counsel, and any actions she took for her clients related to the underlying litigation were uttered or published in the course of judicial proceedings, and thus are absolutely privileged.

But even absent the privilege protections, Ms. Smith's Complaint fails to state a claim for which relief can be granted. Ms. Pierce did not intentionally cause Ms. Smith emotional distress, slander or defame Ms. Smith, abuse the legal process, maliciously prosecute Ms. Smith, or violate 42 U.S.C. § 2000a or NRS Chapter 651, and Ms. Smith has not alleged facts sufficient to state any claim to relief that is plausible on its face. Therefore, the Court can and should grant this motion and also dismiss Ms. Smith's Complaint on the merits.  Finally, the Court should award Ms. Pierce her costs and attorneys' fees under NRS 41.670.

Snell & Wilmer

L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Ms. Pierce's Only Connection to Ms. Smith is in Her Capacity as Counsel for the Defendant Entities.

This case is one of two actions filed by Ms. Smith against her mother's former employers, the Defendant Entities, and the counsel (including Ms. Pierce) representing the Defendant Entities in another, currently pending lawsuit. *See* Pl.'s Compl., ECF No. 1-1, at ¶¶ 15-21. Ms. Smith filed her First Amended Complaint in the Eighth Judicial District Court of Clark County, Nevada on May 3, 2019. *See* ECF No. 1-1. Defendant Ethan Thomas filed a notice of removal to this Court [ECF No. 1] on May 20, 2019. Ms. Pierce joined and consented to defendant Thomas's removal. *See* ECF No. 6. This Court assumed jurisdiction of the instant action on May 28, 2019, as a related action under LR 42-1, since it presented nearly identical factual issues and legal questions to a case filed by Ms. Smith already pending before this Court. *See* ECF No. 10.

Ms. Smith alleges that when litigating the lawsuit brought by her mother against the Defendant Entities, Ms. Pierce, as counsel for the Defendant Entities, improperly sought a temporary protective order against Ms. Smith related to threats Ms. Pierce and the Defendant Entities believed Ms. Smith had made towards them and their employees. *See* Pl.'s Compl., ECF No. 1-1, at ¶¶ 28-29. Ms. Smith also alleges that Ms. Pierce improperly disclosed a confidential settlement agreement between the Defendant Entities and Ms. Smith. *See* Pl.'s Compl., ECF No. 1-1, at ¶ 39.[1] Finally, Ms. Smith alleges that Ms. Pierce improperly accused Ms. Smith of crimes of stalking, harassment, aggravated stalking, and called Ms. Smith inappropriate racial slurs. *See* Pl.'s Compl., ECF No. 1-1, at ¶¶ 71-72, 77-78. As discussed in detail below, Ms. Pierce adamantly denies ever having used racial slurs toward Ms. Smith, and only "accused" Ms. Smith of wrongdoing in the course of ongoing legal proceedings—namely in seeking redress from the courts in the form of request for protective orders.

---

[1]  The Court may take judicial notice of the Settlement Agreement, as well as the pleadings and papers publicly filed in the underlying litigation without converting this motion to a motion for summary judgment. *See infra*, Section III(C), and Ms. Pierce's concurrently filed Request for Judicial Notice ("RJN").

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

It is undisputed that Ms. Pierce's sole connection to Ms. Smith is in her capacity as counsel to the Defendant Entities in a lawsuit brought by Ms. Smith's mother against the Defendant Entities. *See, e.g.,* Pl.'s Compl., ECF No. 1-1, at ¶ 3 ("The defendants through their current counsel in another lawsuit, Shannon Pierce, continued spreading these false accusations…"); *see also* ¶¶ 34, 35, 71, 77. Indeed, Ms. Smith submitted a declaration under penalty of perjury in support of an opposition to a motion in her mother's lawsuit, in which Ms. Smith directly connects the alleged statements by Ms. Pierce that are subject of this action to her mother's litigation. *See* Opposition to Defendants' Emergency Motion for Protective Order to Exclude Latonia Smith from All Proceedings on an Order Shortening Time, attached to the RJN as Ex. A, at pp. 9-12 (Declaration of Latonia Smith). Ms. Pierce never interacted with Ms. Smith outside of her capacity as counsel, and Ms. Smith does not allege Ms. Pierce interacted with Ms. Smith outside of her capacity as counsel.

**B.    The Applications for Protective Orders Against Ms. Smith.**

In November 2017, the Defendant Entities terminated Ms. Smith's mother's employment in connection with Ms. Smith's mother admittedly taking money from the hotel room of a guest. *See* Defendants' Emergency Motion for Protective Order to Exclude Latonia Smith from All Proceedings on an Order Shortening Time in Eighth Judicial District Court Case No. A-18-784032-C ("MPO"), attached to the RJN as Ex. B, at 4:7-9. Planet Hollywood supervisor Samantha Radak ("Ms. Radak") was the employee that informed Ms. Smith's mother that her employment was terminated. *Id.* at 4:9-10. Thereafter, Ms. Radak received numerous email and social media messages insulting her and escalating to threats to Ms. Radak's personal safety. *Id.* at 4:10-14.

In response to these threats, the Defendant Entities and Ms. Radak filed a complaint against Ms. Smith in the Eighth Judicial District Court, Case No. A-18-771192-C. *See* Complaint in Case No. A-18-771192-C, attached to the RJN as Ex. C. Ms. Radak also sought a Temporary Protective Order for Protection against Stalking, Aggravated Stalking, or Harassment (NRS 200.591) in the Justice Court of Las Vegas Township, Case No. 18PO0421. The Las Vegas Justice Court granted Ms. Radak's application and issued a protective order against Ms. Smith and in favor of Ms. Radak. *See* Protective Order issued in Case No. 18PO0421, attached to the RJN as Ex. D.

In June 2018, Ms. Radak, the Defendant Entities, and Ms. Smith entered into a settlement agreement to, among other things, dismiss the complaint filed in Case No. A-18-771192-C against Ms. Smith in exchange for Ms. Smith's agreement to not make any threatening or disparaging statements towards Ms. Radak, the Defendant Entities, their employees, and their attorneys. *See* June 2018 Settlement Agreement ("Settlement Agreement"), attached to the RJN as Ex. E. While the parties agreed to the confidentiality of the Settlement Agreement, they provided an express exception to the confidentiality provision if further threatening or disparaging comments were made against the Defendant Entities or their employees or attorneys:

> Confidentiality. The Parties and their attorneys represent, warrant, and agree that the terms and contents of this Agreement and all information and evidence elicited or exchanged during the Dispute and in negotiating this Agreement are and shall be treated as confidential and shall not be disclosed, in any way used or described or characterized to any other person or entity except the parties hereto as described herein. This confidentiality provision and agreement is a material term of this Agreement, breach of which the Parties hereby agree will cause the Parties irreparable harm. **Notwithstanding the foregoing, in the event of any further threatening or disparaging comments made against Ms. Radak or Caesars, Ms. Radak and/or Caesars shall have the right to disclose this Agreement to a court as part of a request for protective or other relief, complaint, or other pleading**. In addition, the Parties agree that responding to unsolicited questions regarding this matter shall not constitute a breach of this provision or the Agreement.

RJN Ex. E, at § 4 (emphasis added).

In November 2018, Ms. Smith's mother filed a Complaint against the Defendant Entities in Case No. A-18-784032-C, alleging that the Defendant Entities defamed her and engaged in intentional misrepresentations through alleged statements concerning the basis for the termination of Plaintiff's mother's employment. *See* MPO, RJN Ex. B, at 5:8-10.

Immediately following a discovery hearing on April 17, 2019, in the Eighth Judicial District Court, Ms. Smith physically threatened Ms. Pierce and Defendant Entities' in-house counsel, co-defendant Ethan Thomas. *Id.* at 6:16-7:8. Given Ms. Smith's threats and her history of making threatening statements to those associated with litigation with her mother, Ms. Pierce reasonably feared for her safety and filed the MPO, on behalf of herself, as counsel, and her clients, the

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Defendant Entities, as well as a personal application for Temporary Protective Order. *See* generally, RJN Ex. B; Protective Order issued in Case No. 19PO0589, attached to the RJN as Ex. F.

Since Ms. Smith's threatening actions directly violated the terms of the Settlement Agreement, and because the Settlement Agreement expressly permitted disclosure of its terms in such scenarios, there existed no prohibition against attaching the Settlement Agreement. Specifically, the following, pertinent sections of the Settlement Agreement provide:

> <u>Non-disparagement</u>. For eighteen (18) months from the date of signing this agreement, **[Smith] agrees that she will not make, or cause to be made any disparaging or threatening statements, comments, or communications of any kind . . . to or about [Defendant Entities** and Radak] or any of them, **or their** products and services, business, technologies, market position, **agents, representatives,** directors, officers, shareholders, **attorneys**, **employees**, vendors, affiliates, successors or assigns, **or any person acting by, through, under, or in concert with any of them.**

RJN Ex. E at § 1(b)(emphasis added).

> <u>Remedies for Breach of Non-Disparagement</u>. [] The Parties agree that a breach of this Agreement will cause irreparable and acknowledge damage to the Parties. ..**[U]pon any breach of this Agreement, including without limitation the non-disparagement clause, the Parties agree that the affected Plaintiffs) [i.e., the Defendant Entities and Radak] will be immediately entitled to injunctive and protective relief** as provided for under applicable law or equity . . . in the event of any such breach. Injunctive and/or protective relief will not be deemed the exclusive remedy for any such breach, but will be in addition to all other remedies available under applicable law.

RJN Ex. E at § 3 (emphasis added).

On April 24, the Court granted the MPO, in part, under NRCP 26 and precluded Ms. Smith's attendance at discovery, depositions, or settlement conferences.[2] In response, Ms. Smith filed this action.

---

[2]  The Court denied the MPO to the extent it sought to preclude Ms. Smith from public proceedings, but informed the parties that they could pursue additional relief, which Ms. Pierce did by seeking a personal Temporary Protective Order against Ms. Smith.

Snell & Wilmer

L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

III.   **LEGAL STANDARD**

    A.   **Ms. Smith's Complaint Constitutes a Strategic Lawsuit Against Public Participation.**

A "Strategic Lawsuit Against Public Participation" (also known as a SLAPP suit) abuses the judicial process "by chilling, intimidating, and punishing individuals for their involvement in public affairs." *LHF Productions, Inc. v. Kabala*, 2:16-cv-02028-JAD-NJK, 2018 WL 4053324, at *2 (D. Nev. Aug. 24, 2018); *see also John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 752, 219 P.3d 1276, 1280 (2009), *superseded by amendment to* NRS 41.660(3)(b) *on other issue*. To combat these oppressive lawsuits, the Nevada Legislature enacted comprehensive anti-SLAPP legislation in 1993, fine-tuning it by amendment several times since. *John*, 125 Nev. at 752; *see also Delucchi v. Songer*, 133 Nev. Adv. Op. 42, 396 P.3d 826, 829–831 & nn.2, 3 (2017) (explaining amendment history).

The anti-SLAPP law creates an immunity from civil liability from any claim based upon "a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.650. It also creates a procedural remedy to vindicate that immunity. "When a plaintiff files a SLAPP suit against a defendant, Nevada's anti-SLAPP statute allows the defendant to file a special motion to dismiss in response to the action." *Stubbs v. Strickland*, 129 Nev. 146, 150, 297 P.3d 326, 329 (2013).

On an anti-SLAPP motion to dismiss, the moving defendant must show "that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Shapiro v. Welt*, 133 Nev. Adv. Op. 6, 389 P.2d 262, 267 (2017) (quoting NRS 41.660(3)(a)). The Nevada Supreme Court has explained that "'good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern' is a phrase that 'is explicitly defined by statute in NRS 41.637.'" *Delucchi*, 396 P.3d at 832.

Because of the statutory definition, "the term 'good faith' does not operate independently within the anti-SLAPP statute." *Shapiro*, 398 P.3d at 267. Thus, "a defendant's conduct constitutes 'good faith communication in furtherance of the right to petition or the right to free speech in direct

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 8 -

connection with an issue of public concern' if it falls within one of the four categories enumerated in NRS 41.637 and 'is truthful or is made without knowledge of its falsehood.'" *Delucchi*, 396 P.3d at 833. As pertinent here, those categories include a "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law[.]" NRS 41.637(3). In order for a statement to be protected under NRS 41.637(3), "the statement must (1) relate to the substantive issues in the litigation and (2) be directed to persons having some interest in the litigation." *Patin v. Ton Vinh Lee*, 429 P.3d 1248, 1251 (Nev. 2018).

When an anti-SLAPP motion challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. *Planned Parenthood Fedn. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fedn. of Am.*, 139 S. Ct. 1446 (2019).

**B.      Anti-SLAPP Protections Apply to State Law Claims in Federal Court.**

"An anti-SLAPP motion is available to defendants in federal court." *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014). Although a state anti-SLAPP statute does not apply to federal claims, state "anti-SLAPP protections apply to state law claims brought in federal court." *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 967 (N.D. Cal. 2013), *aff'd*, 609 Fed. Appx. 497 (9th Cir. 2015)(unpublished). Where, as here, an anti-SLAPP motion challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. *Planned Parenthood Fedn. of Am., Inc.*, 890 F.3d at 834 (9th Cir. 2018).

**C.      Ms. Smith's Claims Also Fail Under Fed. R. Civ. P. 12(b)(6).**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) "requires

1    more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

2    will not do." *Id.*

3        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

4    accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

5    662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the

6    plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7    defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer

8    possibility that a defendant has acted unlawfully." *Id.*

9        "Generally, a district court may not consider any material beyond the pleadings in ruling on

10   a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.

11   19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may

12   be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose

13   authenticity no party questions, but which are not physically attached to the pleading, may be

14   considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss

15   into a motion for summary judgment. *E.g., Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)

16   *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1123–24 (9th Cir.

17   2002). On a motion to dismiss, the Court may also take judicial notice of "matters of public record."

18   *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers

19   materials outside of the pleadings, the motion to dismiss is converted into a motion for summary

20   judgment. Fed. R. Civ. P. 12(d).

21   **IV.    ARGUMENT**

22       **A.    Ms. Smith's State Law Claims are Entirely Based upon Good Faith
23              Communications in Furtherance of the Right to Petition.**

24       A lawsuit is "based on" rights protected by the anti-SLAPP statute when conduct falling

25   within one of the statutory grounds in NRS 41.637 makes up an element of Plaintiff's claim. *See*

26   *Goldentree Master Fund, Ltd. v. EB Holdings II, Inc.*, 415 P.3d 14, 2018 WL 1634189 at * (Nev.

27   March 30, 2018) (unpublished) (adopting standard from *Park v. Board of Trustees of Cal. State*

28   *Univ.*, 2 Cal. 5th 1057 (2017)). Here, all of Ms. Smith's state law claims (for intentional infliction

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

of emotional distress, defamation/defamation per se, slander/slander per se, abuse of process, malicious prosecution, violations of NRS Chapter 651, and permanent injunctive relief[3]) are based entirely upon written and/or oral statements made in direct connection with pending litigation under consideration by a judicial body. Indeed, Ms. Pierce is counsel of record for the Defendant Entities and was acting solely in her capacity as attorney for the Defendant Entities regarding a lawsuit filed by Ms. Smith's mother whenever Ms. Pierce interacted with Ms. Smith. *See, e.g.,* Pl.'s Compl., ECF No. 1-1, at ¶¶ 3, 34, 35, 71, 77; *see also* RJN Ex. A at pp. 9-12.

Moreover, Ms. Pierce's description, as counsel, of the threats her clients' employees received was her and her clients' honest opinion. Specifically, in the MPO, Ms. Pierce explained that the Defendant Entities (and Ms. Pierce) believed Ms. Smith's threat of violence was credible since Ms. Smith had engaged in similar threatening conduct in the past. RJN Ex. B, MPO, at 1:24-2:3.

A "sincere statement of pure opinion is not an 'untrue statement of material fact,'" even if others disagree. *See,* e.g., *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). Ms. Pierce, in her capacity as counsel, believed that Ms. Smith posed a threat of physical violence to her and her clients and continues to so believe. RJN Ex. B, MPO, at 1:24-2:3. Indeed, the district court partially granted the relief sought in the MPO (with the exception of precluding Ms. Smith from public hearings), and every court entered an order protecting each of five applicants (including Ms. Pierce) who have sought TPOs against Ms. Smith. *See* RJN Exs. D, F.

Ms. Pierce's statements are thus quintessential good faith communications in furtherance of the right to petition. *See Allstate Ins. Co. v. Belsky*, 2017 WL 7199651, at *3 (D. Nev. Mar. 31, 2017) (holding that "petition[ing] a court for redress . . . qualifies as 'good faith communication in furtherance of the right to petition.'"). That is, Ms. Pierce's statement is a "[w]ritten or oral

---

[3] Ms. Smith also asserts a claim for violation of 42 U.S.C. § 2000a, although as discussed in detail below, Ms. Smith does not specifically allege this claim against Ms. Pierce. However, liberally construing Ms. Smith's Complaint as asserting a cause of action for violation of 42 U.S.C. § 2000a against Ms. Pierce, Ms. Pierce's special motion to dismiss under NRS 41.660 does not apply to this cause of action because it is a federal claim. This federal claim is subject to dismissal based on Ms. Pierce's FRCP 12(b)(6) Motion to Dismiss that begins on page 8 at § B *infra*.

statement made in direct connection with an issue under consideration by a . . . judicial body" . . . which is truthful or is made without knowledge of its falsehood. NRS 41.637(2), (4). An alternative holding would undisputedly chill an aggrieved party's ability to seek redress and/or injunctive relief from the courts, and thus represents the very purpose for which NRS 41.650 exists.

### B. Ms. Smith Cannot Succeed on the Merits.

As discussed above, where, as here, an anti-SLAPP motion challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. *Planned Parenthood Fedn. of Am., Inc.*, 890 F.3d at 834 (9th Cir. 2018). Therefore, whether the Court considers Ms. Pierce's motion under NRS 41.660 or FRCP 12(b)(6), Ms. Smith's Complaint fails as a matter of law and the Court should dismiss it.

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, Ms. Smith's Complaint fails to contain sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

### 1. Ms. Pierce Is Immune from Liability Under NRS 41.650.

Under Nevada law, "[a] person who engages in a good faith communication in furtherance of the right to petition is immune from any civil action for claims based upon the communication." NRS 41.650. This procedural mechanism "filters unmeritorious claims in an effort to protect citizens from costly retaliatory lawsuits arising from their right to free speech under both the Nevada and Federal Constitutions." *LHF Productions, Inc. v. Kabala*, 2:16-cv-02028-JAD-NJK, 2018 WL 4053324, at *2 (D. Nev. Aug. 24, 2018) (*quoting John v. Douglas County Sch. Dist.*, 219 P.3d 1276, 1282 (Nev. 2009)). Because Ms. Smith's state law claims are "based upon" Ms. Pierce's petitioning activity, Ms. Pierce is immune, and Ms. Smith has failed to state a claim for which relief can be granted.

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

2.      **Ms. Smith's Complaint Is Barred by the Absolute Litigation Privilege.**

The Nevada Supreme Court "has recognized the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged, rendering those who made the communications immune from civil liability." *Greenberg Traurig v. Frias Holding Co.*, 130 Nev. 627, 630, 331 P.3d 901, 903 (2014) (quotations omitted). The broad scope of the absolute litigation privilege has been recognized to extend to causes of action in both Nevada and federal courts. *Brekka v. Smith*, 2:08-cv-01429-RCJ-LRL, 2009 WL 10693603, at *3 (D. Nev. May 19, 2009) (citing *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby*, 440 F. Supp. 2d 1184, 1195 (D. Nev. 2006)).

"The policy behind the [litigation] privilege, as it applies to attorneys participating in judicial proceedings, is to grant them as officers of the court the utmost freedom in their efforts to obtain justice for their clients." *Greenberg Traurig*, 130 Nev. at 630 (quotations omitted, alteration in original)." "The scope of the absolute privilege is quite broad." *Fink v. Oshins*, 118 Nev. 428, 433, 49 P.3d 640, 644 (2002). It "applies as long as the statements are in some way pertinent to the subject of the controversy." *Greenberg Traurig*, 130 Nev. at 630 (quotations omitted). "[C]ourts should apply the absolute privilege liberally, resolving any doubt in favor of its relevancy or pertinency." *Fink* 118 Nev. at 433 (quotation omitted).

It is undisputed that Ms. Smith's only relation to Ms. Pierce, and the entire basis for Ms. Smith's claims against Ms. Pierce, arise from Ms. Pierce's role as counsel for the Defendant Entities in litigation brought by Ms. Smith's mother against the Defendant Entities. *See, e.g.*, § II A *supra*. The subject statements were made by Ms. Pierce, as attorney acting on behalf of her clients, in legal filings or open court. These statements were pertinent to Ms. Pierce's request, on behalf of her clients, for an order enjoining Ms. Smith from attending case hearings, discovery, and conferences, and an order barring Ms. Smith from future proceedings in the litigation instituted by Ms. Smith's mother. *See generally*, RJN Ex. B. These communications were part of Ms. Pierce's advocacy in seeking discretionary protective relief. Ms. Pierce is thus immune from liability based on the reference to the settlement agreement or other allegations made in the MPO or representation of the Defendant Entities in Ms. Smith's mother's lawsuit against them.

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

**3.   Ms. Smith Fails to State a Claim for Intentional Infliction of Emotional Distress.**

Intentional infliction of emotional distress requires Ms. Smith to prove extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress. *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (1999). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998). "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F.Supp.2d 1103, 1121 (D. Nev. 2009). Therefore, in order to survive a motion to dismiss her Intentional Infliction of Emotional Distress Claim, Ms. Smith must allege that Ms. Pierce's purported actions were so "extreme and outrageous" that they transcend "all possible bounds of decency" and are regarded as "utterly intolerable in a civilized community." *Maduike,* 953 P.2d at 26.

Ms. Smith does not identify with specificity which alleged actions or statements caused her to suffer emotional distress such that Ms. Pierce can reasonably defend this claim. Indeed, Ms. Smith only alleges that the Defendant Entities "began falsely relaying to third parties that the Plaintiff was committing crimes and still continues to do so presently." Pl.'s Compl., ECF No. 1-1, at ¶ 62. Ms. Smith has not indicated any statements that are so "extreme and outrageous" that

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

they transcend "all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[4]

Instead, Ms. Smith broadly refers to the actions taken by Ms. Pierce in her representation of the Defendant Entities in Ms. Smith's mother's lawsuit against the Defendant Entities. As discussed above, not only are the actions Ms. Pierce took in litigation subject to the absolute litigation privilege, they also cannot transcend all possible bounds of decency when the underlying courts granted the relief Ms. Pierce sought on behalf of her clients. As such, Ms. Smith's intentional infliction of emotional distress claim must fail.

### 4. Ms. Smith Has Not Pleaded a Plausible Claim for Slander/Slander Per Se or Defamation/Defamation Per Se.

Ms. Smith asserts causes of action for "defamation/defamation per se" (*see* Pl.'s Compl., ECF No. 1-1, at ¶¶ 69-74) and "slander/slander per se" (*see* Pl.'s Compl., ECF No. 1-1, at ¶¶ 75-80). As a threshold matter, these causes of action, as well as Ms. Smith's allegations for each cause of action, are virtually identical. *Compare* Pl.'s Compl., ECF No. 1-1, at ¶¶ 69-74 with ¶¶ 75-80. "Defamation is a publication of a false statement of fact." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002) (*citing Posadas v. City of Reno*, 851 P.2d 438, 441–42 (1993)). Defamation may be spoken or written. Generally, spoken defamation is slander, and written defamation is libel. *See Flowers v. Carville*, 292 F. Supp. 2d 1225, 1232 (D. Nev. 2003) (citing Restatement (Second) of Torts § 568 (1977)); *see also Ferm v. McCarty*, 2:12-cv-00782-GMN, 2013 WL 800536, at *7 (D. Nev. Jan. 28, 2013), *report and recommendation adopted*, 2:12-CV-00782-GMN, 2013 WL 800819 (D. Nev. Feb. 20, 2013).

---

[4] Ms. Smith also includes allegations in her Complaint, although not specifically alleged in her intentional infliction of emotional distress cause of action, regarding alleged racial slurs. *See* Pl.'s Compl., ECF No. 1-1, at ¶¶ 34, 71-72, 77-78. Although the racially charged statements alleged in Ms. Smith's Complaint are unquestionably vulgar and offensive (and **Ms. Pierce adamantly denies ever having made such comments**), such comments do not amount to the required "extraordinary transgression of the bounds of socially tolerable conduct." *See Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 Fed. Appx. 181, 183 (9th Cir. 2010) (unpublished) (holding that under Oregon law, use of a racial epithet on two occasions did not amount to an extraordinary transgression of the bounds of socially tolerable conduct required to state a claim for intentional infliction of emotional distress); *Irving v. J. L. Marsh, Inc.*, 360 N.E.2d 983, 986 (Ill. App. 3d Dist. 1977) (holding that under Illinois law, the use of a racial slur does not possess the degree of severity that is necessary to establish a cause of action for intentional infliction of emotional distress).

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

To succeed on a defamation claim in Nevada, a plaintiff must prove: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (*quoting Pope v. Motel 6*, 121 Nev. 307, 114 P.3d 277, 282 (Nev.2005)). To constitute slander per se or defamation per se, the alleged defamation must be oral and must fall into one of four categories: (1) that the plaintiff committed a crime; (2) that the plaintiff has contracted a loathsome disease; (3) that a woman is unchaste; or, (4) the allegation must be one which would tend to injure the plaintiff in his or her trade, business, profession or office. *Branda v. Sanford*, 97 Nev. 643, 637 P.2d 1223, 1225 (Nev. 1981).

To support these causes of action, Ms. Smith alleges that Ms. Pierce "made unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing her of the crimes of stalking, harassment, aggravated stalking, sending threatening messages, calling her [the N-word], and calling her a 'schizophrenic.'" Pl.'s Compl., ECF No. 1-1, at ¶¶ 72, 78. Ms. Smith further alleges that Ms. Pierce "has called the Plaintiff a word so degrading and derogatory in our society that it would be considered defamation per se." Pl.'s Compl., ECF No. 1-1, at ¶¶ 73, 79.

To the extent Ms. Smith references statements made in other lawsuits, such as allegations of unlawful activity, such communications were uttered or published in the course of judicial proceedings, and are, therefore, privileged. *Greenberg Traurig v. Frias Holding Co.*, 130 Nev. 627, 630, 331 P.3d 901, 903 (2014). Moreover, to the extent Ms. Smith alleges Ms. Pierce used a word so degrading and derogatory in our society that it would be considered defamation per se, Ms. Smith's claim fails. While again, Ms. Pierce **adamantly denies ever having made such comments**, the use of the racial slur outlined in Ms. Smith's Complaint does not constitute defamation per se or slander per se. *See Bradshaw v. Swagerty*, 563 P.2d 511, 514 (Kan. App. 1977) (holding that the use of the same racial slur alleged in this action is not within any category recognized as slanderous per se); *Irving v. J. L. Marsh, Inc.*, 360 N.E.2d 983, 985 (Ill. App. 3d Dist. 1977) (same).

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

Furthermore, Ms. Smith fails to sufficiently plead a plausible claim that Ms. Pierce published defamatory statements to a third person *outside the course of judicial proceedings*. Ms. Smith's Complaint only alleges that "The defendants through their current counsel in another lawsuit, Shannon Pierce, continued spreading these false accusations to third parties including but not limited to Brandon Trout [former counsel for Ms. Smith's mother], Wade Beavers [attorney at Fennemore Craig, P.C., Ms. Pierce's law firm], Jerome Bowen [former counsel for Ms. Smith's mother], Ethan Thomas [in-house counsel for the Defendant Entities], Shawna Braselton [legal administrative assistant at Fennemore Craig, P.C., Ms. Pierce's law firm]." Pl.'s Compl., ECF No. 1-1, at ¶ 3.

First, each of the above-named individuals is an attorney related to the underlying litigation with the exception of Ms. Braselton, who is a legal administrative assistant at Ms. Pierce's law firm. *See* February 19, 2019, Notice of Appearance of Counsel in Eighth Judicial District Court Case No. A-18-784032-C, attached to the RJN as Ex. G. The fact that each of these individuals is counsel or an agent of counsel underscores the fact that any such communications were directly in the course of judicial proceedings.

Second, and more importantly, Ms. Smith does not identify with specificity the "false accusations" to which she refers, nor does she specify how or when Ms. Pierce published these statements. This Court has dismissed similar allegations. *See Schaefer v. Diamond Resorts Intern. Mktg., Inc.*, 2:14-CV-01900-GMN, 2015 WL 1932196, at *7–8 (D. Nev. Apr. 28, 2015) (dismissing defamation and slander per se claims without prejudice with leave to amend). "These are crucial facts needed to satisfy the element of an unprivileged communication to a third person. Without such facts, Defendants are not put on notice as to their conduct so that they can adequately defend against the suit." *Id.*; *see also Blanck v. Hager*, 360 F.Supp.2d 1137, 1160 (D. Nev. 2005).

Because Ms. Smith has failed to allege that Ms. Pierce published defamatory statements to third parties with the requisite specificity—including specifically to whom the statements were made, when the statements were made, and what specifically was said—the Court should dismiss her slander/slander per se and defamation/defamation per se claims.

**5.  Ms. Smith Fails to Plead a Plausible Claim for Abuse of Process.**

Ms. Smith improperly relies on the fact that Ms. Pierce filed an application for a temporary protective order against Ms. Smith as the sole basis for her abuse of process cause of action. *See* Pl.'s First Amd. Compl., ECF No. 1-1, at ¶85. But Nevada courts have long recognized that such a cause of action is improper.

Filing a complaint is insufficient to establish the tort of abuse of process. *Nevada Credit Rating Bureau, Inc., v. Williams,* 88 Nev. 601, 606, 503 P.2d 9, 12 (1972); *Dutt v. Kremp,* 111 Nev. 567, 571, 894 P.2d 354, 357 (1995); *Laxalt v. McClatchy,* 622 F.Supp. 737, 752 (D. Nev. 1985); *Bricklayers & Allied Craftsmen, Local Union No. 3 v. Masonry and Tile Contractors Ass'n of Southern Nevada,* 1990 U.S. Dist. LEXIS 18520 (D. Nev. 1990) ("The mere filing of a complaint itself is insufficient to establish the tort of abuse of process"); *Ging v. Showtime Entertainment, Inc.,* 570 F.Supp. 1080, 1083 (1983) (finding that, under Nevada law, the initiation of a lawsuit does not constitute the tortious act required as one of the elements of abuse of process); *Rashidi V. Albright,* 818 F.Supp. 1354, 1358-59 (D. Nev. 1983) (same). Rather, an abuse of process claim is appropriate where, logically, a party abuses the process of litigation. For example, the tort of abuse of process may lie where a party files huge batteries of motions solely for the purpose of coercing a settlement. *See Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985).

The two elements required to establish the tort of abuse of process are: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Kovacs v. Acosta,* 106 Nev. 57, 59, 787 P.2d 368, 369 (1990). An ulterior purpose is any improper motive underlying the issuance of legal process. *Posadas v. City of Reno*, 109 Nev. 448, 457, 851 P.2d 438, 445 (1993) (quoting *Laxalt v. McClatchy,* 622 F.Supp. 737, 751 (D.Nev.1985)).

Ms. Smith has failed to state a claim for abuse of process under Nevada law. Indeed, the fact that the court granted Ms. Pierce's MPO is *prima facie* evidence that the application for such an order was warranted and not abusive. Indeed, every court entered an order protecting each of five applicants (including Pierce) who have sought protective orders against Ms. Smith. Because Ms. Smith's sole basis for her abuse of process cause of action is that Ms. Pierce filed an application

1    for protective order (which the underlying court granted), Ms. Smith's claim fails as a matter of

2    law.

3              **6.      As a Matter of Law, Ms. Smith Cannot Establish the Tort of Malicious**
                         **Prosecution.**
4

5              A malicious prosecution claim requires that the defendant initiated, procured the institution

6    of, or actively participated in the continuation of a ***criminal*** proceeding against the plaintiff.

7    *LaMantia v. Redisi*, 38 P.3d 877, 879–80 (Nev. 2002); *see* Restatement (Second) of Torts § 653

8    cmts. c, f & § 655 (1977). Ms. Pierce neither initiated nor procured the institution of a criminal

9    proceeding against Ms. Smith, and Ms. Smith does not allege that Ms. Pierce initiated or procured

10   a criminal proceeding against her. Therefore, as a matter of law, Ms. Smith cannot assert a

11   malicious prosecution claim against Ms. Pierce.

12             **7.      Ms. Smith Cannot Assert Violations of 42 U.S.C. § 2000a or NRS 651**
                         **against Ms. Pierce.**
13

14             Ms. Smith's penultimate cause of action is for violations of 42 U.S.C. § 2000a[5] and NRS

15   Chapter 651. It is unclear whether Ms. Smith intends to assert this cause of action against Ms.

16   Pierce, as these statutes specifically govern places of public accommodation. Indeed, Ms. Pierce is

17   not mentioned anywhere in the paragraphs concerning this cause of action, and is only presumably

18   referenced via Ms. Smith's incorporation of the preceding paragraphs in her Complaint. However,

19   liberally construing Ms. Smith' Complaint for asserting this cause of action against Ms. Pierce, this

20   cause of action fails because Ms. Pierce cannot be liable for violations of 42 USC § 2000a and NRS

21   Chapter 651, as she is not a place of public accommodation, and only represented such places of

22   public accommodation in her capacity as counsel. As such, Ms. Smith's cause of action for

23   violations of 42 USC § 2000a and NRS Chapter 651 fails to state a claim for which relief can be

24   granted and the Court should dismiss it.

25

26

27   ───────────────
     [5]  Because an alleged violation of 42 U.S.C. § 2000a is a federal claim not subject to Nevada's anti-
28   SLAPP statute, to the extent Ms. Smith asserts this cause of action against Ms. Pierce, Ms. Pierce
     moves solely to dismiss it under Fed. R. Civ. P. 12(b)(6).

                                                    - 19 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

8.      **Ms. Smith's Cause of Action for a Permanent Injunction Fails.**

Ms. Smith's final cause of action requests permanent injunctive relief against Ms. Pierce. But a request for an injunction is not a cause of action. *See First 100, LLC v. Wells Fargo Bank, N.A.*, 2:13–CV–431–JCM–PAL, 2013 WL 3678111 (D. Nev. 2013). An injunction is a form of relief, and is an exercise of a court's equitable authority. *See Salazar v. Buono*, 559 U.S. 700, 714–15 (2010). And because each of Ms. Smith's causes of action fail, Ms. Smith is not entitled to injunctive relief.

Given that Ms. Pierce's only connection to Ms. Smith is in Ms. Pierce's role as litigation counsel (and Ms. Smith's as a witness in that case), there is no injunctive relief that the Court could fashion which would not implicate principles of the of the absolute litigation privilege, public redress, and Nevada's anti-SLAPP laws.

**V.      CONCLUSION**

The Court should grant Ms. Pierce's special motion to dismiss pursuant to Nevada's Anti-SLAPP statute, NRS 41.660, and motion to dismiss Ms. Smith's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss Ms. Smith's First Amended Complaint in its entirety, with prejudice, and award Ms. Pierce her attorney's fees, costs, and a $10,000 penalty pursuant to NRS 41.670(1)(b). If the Court is inclined to grant fees, Ms. Pierce will submit an affidavit of fees and costs in accordance with the federal and local rules.

Dated:  May 28, 2019.               SNELL & WILMER L.L.P.

By:
Alex L. Fugazzi, Esq. (NV Bar No. 9022)
Michael Paretti (NV Bar No. 13926)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

*Attorneys for Defendant Shannon Pierce*

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this date, I caused to be served a true and correct copy of the foregoing **DEFENDANT SHANNON PIERCE'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660 -AND- MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)** by method indicated below:

☐    **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. pursuant to EDCR Rule 7.26(a). A printed transmission record is attached to the file copy of this document(s).

☒    **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Las Vegas, Nevada addressed as set forth below.

> Latonia Smith (*in Pro Per*)
> 9748 Canyon Landing Ave.
> Las Vegas, NV 89166
> Tel:    (702) 521-3522

☐    **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐    **BY PERSONAL DELIVERY:** by causing personal delivery by         , a messenger service with which this firm maintains an account, of the document(s) listed above to the person(s) at the address(es) set forth below.

☒    **BY ELECTRONIC SUBMISSION:** submitted to the above-entitled Court for electronic filing and service upon the Court's Service List for the above-referenced case.

☐    **BY EMAIL:** by emailing a PDF of the document listed above to the email addresses of the individual(s) listed below.

Riley Clayton, Esq.
HALL JAFFE & CLAYTON, LLP
7425 Peak Drive
Las Vegas, NV 89128
Telephone: 702.316.4111
Facsimile: 702.316.4114
rclayton@lawhjc.com

*Attorneys for Defendant Caesars Entertainment Corporation, PHWLV, LLC dba Planet Hollywood Resort & Casino, and Ethan Thomas*

DATED this 28th day of May, 2019.

An employee of SNELL & WILMER L.L.P.

4843-3139-9831

Snell & Wilmer
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200