LATONIA SMITH
9748 CANYON LANDING AVE.
LAS VEGAS, NV 89166
725-203-2455
PLAINTIFF IN PROPER PERSON

UNITED STATES DISTRICT COURT

DISTRICT OF, NEVADA

LATONIA SMITH,

               Plaintiff(s),

        -vs-

CAESARS ENTERTAINMENT

CORPORATION, a Delaware corporation;

PHWLV, LLC d/b/a PLANET HOLLYWOOD

RESORT AND CASINO, a Nevada limited

liability company; SHANNON PIERCE;

ETHAN THOMAS,

               Defendant(s).

CASE NO. 2:19-cv-00856-GMN-GWF

**OPPOSITION TO CAESAR ENTERTAINMENT CORPORATION'S, PHWLV'S, AND**

**ETHAN THOMAS' SPECIAL MOTION TO DISMISS AND MOTION TO DISMISS;**

**PLAINTIFF'S CROSS MOTION FOR LEAVE TO AMEND COMPLAINT**

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

AUG - 9 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                          DEPUTY

1

## Table of Contents

I.     Preface................................................................................................................4

II.    Preamble.............................................................................................................4

III.   Introduction.........................................................................................................4

IV.    Legal Standard....................................................................................................8

V.     Argument...........................................................................................................10

VI.    Plaintiff Is Alternatively Entitled To Discovery...............................................17

VII.   Plaintiff Should Be Awarded Fees...................................................................17

VIII.  Opposition To Defendants' Request For Judicial Notice..................................17

IX.    Plaintiff's Cross Motion For Leave To Amend Complaint (Second Amended

       Complaint).........................................................................................................19

X.     Conclusion.........................................................................................................20

**Table of Authorities**

Cases

*Hull v. Rossi*, 13 Cal. App. 4th 1763, 1769 (1993)...................................................................................8

*Shapiro v. Welt*, 133 Nev. 35 37, 389 P.3d 262, 268 (2017)........................................................................8

*Pope v. Fellhauer*, No. 74428 (Nev. March 21, 2019)............................................................................8, 12

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 988 (N.D. Cal. 2013).......8

*Planned Parenthood Federation of America v. Center for Medical Progress*, No. 16-16997 (9th Cir. May 16, 2018)...........8

*Z.F. v. Ripon United School District*, 482 F. App'x 239, 240 (9th Cir. 2012)...............................................9

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 530, 44, Cal. Rptr. 3d 517 (4th Dist. 2006)....10

*Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 823, 33 Cal. Rptr. 2d 446 (2d. Dist. 1994)....................10

*Oasis West Realty LLC. v. Goldman*, supra, 51 Cal. 4th at 820..................................................................10

*Mann v. Quality Old Time Service, Inc*, 120 Cal. App. 4th 90, 106, 15 Cal. Rptr. 3d 215 (4th dist. 2004)....10

*Bently Reserve L.P. v. Papaliolios*, 218 Cal. App. 4th 418, 426, 435 n.8, 160 Cal. Rptr. 3d 423 (1st Dist. 2013)....10

*Erickson v. Pardus*, No. 06-7317 (2007)..................................................................................................10

*Hebbe v. Piler*, 611 F.3d 1202 (9th Cir. 2010)........................................................................................10

*Post v. Mendel*, 507 A.2d 351 356-57 (Pa. 1986).....................................................................................14

*Shapiro*, 133 Nev. at ——, 389 P.3d at 269..........................................................................................14

*Bradley v. Hartford Accident & Indemnity Co.*, 30 Cal. App 3d 818 (1973).............................................14

*Striberg v. Raymond* 370 Mass. 105 (1976)...........................................................................................14

*Meltzer*, 2002 U.S. Dist. LEXIS 5514...................................................................................................15

*Jacobs v. Adelson*, 130 Nev. Adv. Op 44 (May 30, 2014).........................................................................15

*Nelson v. Miller*, 607 P.2d 438, 433 (Kan. 1980)....................................................................................16

*Vrabel v. JP Morgan Chase Bank, N.A.*, No. C-C-09-1278 MMC (N.D. Cal. Aug. 6, 2009)........................17

*Roylene Ray and Kelly Cannon v. Bluehippo Funding LLC and Joseph Rensin*..........................................17

*Sergio Palomo vs. Joseph Demaio et al*..................................................................................................17

*Lee v. City of Los Angeles*, 250 F.3d 668. 690 (9th Cir. 2001)..................................................................18

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994).......................................................................................18

*Parrino v. FHP, Inc.*, 146 f.3d 699, 705-06 (9th Cir. 1998)......................................................................19

*re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1213 n.8 (N.D. Cal. 2000)........................................19

*Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1998)..............................................................................19

*Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458-59 (9th Cir. 1995)...........................................................19

*Griggs v. Pace Am. Grp., Inc.* 170 F.3d 877, 880 (9th Cir. 1999)..............................................................19


Statutes

*Cal. Code Civ. P. § 425.16(a)*................................................................................................................8

*Federal Rule of Civil Procedure 12(b)(6)*............................................................................................9, 12

*Federal Rule of Civil Procedure 8*..................................................................................................9, 10, 12

*Restatement (Second) of Torts §586 at Comment e, 248 (1976)*.............................................................13

*Whiting, supra note 5*...........................................................................................................................14

NRS 199.310...........................................................................................................................................16

NRS 651.070...........................................................................................................................................17

NRS 651.080...........................................................................................................................................17

NRS 651.090...........................................................................................................................................17

Fed. R. Evid. 201.....................................................................................................................................18

FRCP 15.................................................................................................................................................19

## I.   PREFACE

The following motion is subject to Plaintiff's Motion to Remand and any appeals that may need to be filed based on that Motion to Remand. Since the Remand is being held up in Federal Court, Ms. Smith files this motion for the record, in the case that this Court refuses to remand Plaintiff's case, which was filed in state court, and the appeals court (and possibly the Supreme Court) upholds a refusal to remand decision. The motion also gives defendants advanced notice for the basis of Ms. Smith's lawsuit, so they may begin crafting whatever story they deem suitable.

## II.   PREAMBLE

Plaintiff Latonia Smith (Ms. Smith) files her opposition to defendants' motion to dismiss, special motion to dismiss, and request for judicial notice. Plaintiff also submits her cross-motion for leave to file an amended complaint.

The motion is brought pursuant to the attached memorandum of points and authorities, the papers and pleadings on file with the Court, the exhibits attached herein, and any other argument that the Court may allow on the matters.

### MEMORANDUM OF POINTS AND AUTHORITIES

## III.   INTRODUCTION

Plaintiff Latonia Smith has worked diligently to respond to defendants' motion as she is confident that defendants' motion is frivolous and a desperate attempt by defense to avoid having to defend their client's indefensible actions, which have caused considerable harm to the Plaintiff. Plaintiff requested that the court grant her an extension to respond to the vast motion filed by defendants and their associates in another case (Latonia Smith v. Fennemore Craig) who are working in connection to have claims dismissed in Federal Court under similar arguments. Since Plaintiff has been able to garner assistance while working around personal issues, Plaintiff has had the ability to expedite this motion, which she eagerly wanted to address, and will no longer be seeking an extension until October 31, 2019 (extension sought to the date of this filing).

It is clear that defense is ignorant of the events, beginning in 2017, that have led up to the filing of this lawsuit by the Plaintiff and have attempted to spin the claims made in Ms. Smith's lawsuit by inserting statements that are not found anywhere on the face of Ms. Smith's complaint. Defense has missed the entire point of Ms. Smith's lawsuit by asserting, as a part of their anti-SLAPP theory, that Ms. Smith's claims arise out of statements that were made in judicial proceedings or judicial writings. Ms. Smith has not asserted anything of the like in her Complaint. Ms. Smith does include the order of background facts without a timeline of such facts (defense is attempting to create their own timeline to suggest certain actions were tied to litigation). Ms. Smith also includes in her background facts, the malicious court filings of defense that are, rightfully, the subject of her abuse of process and malicious prosecution claims, but she makes no discussion about statements made in judicial proceedings being the premise of any causes of actions. However, the statements made in judicial proceedings highlight the recklessness of defendants and substantiate Ms. Smith's claims that the defendants also engaged in this reckless behavior, directed towards Ms. Smith, outside of (and separate from) court proceedings, as this has been their pattern. Even in defendants' instant

motion to dismiss, defendants continue to assert as fact (and rest on the false premise) that Ms. Smith engaged in crimes (referring to the previously dismissed lawsuit).

Ms. Smith's Complaint makes it very clear that defendants targeted her from the outset of Mrs. Peruzar's termination and that all actions taken by defendants over the course of two years have been the result of their hate-filled retaliation against Mrs. Peruzar (ulterior motive). The claims in the instant lawsuit are based on actions that defendants took, outside of any pending litigation or judicial proceeding, where CEC and PHWLV (including Ethan Thomas, the representative later sent to harass, defame, and threaten Ms. Smith along with Shannon Pierce) were acting as a white-collar mob. Ethan Thomas is being sued in his individual capacity as the person that was sent by CEC/PHWLV to harass and threaten Ms. Smith, along with in his capacity as a representative for CEC/PHWLV. Mr. Thomas was added to the lawsuit after he further agreed to join the plan to file TPOs against Ms. Smith (Mr. Thomas' TPO was received after Ms. Smith filed the instant lawsuit and filed directly after Ms. Pierce's filing).

Ms. Smith's lawsuit arises from ongoing defamation/slander, gross harassment, and gross infliction of emotional distress directed towards Ms. Smith by Caesars Entertainment, Planet Hollywood, and Ethan Thomas (their representative). Ms. Smith also has claims for a violation of state anti-discriminatory law, abuse of process, malicious prosecution, and injunctive relief and is requesting, herein, to add the two causes of action, breach of confidentiality and civil conspiracy (civil conspiracy was accidently left out of the final pdf of Ms. Smith's complaint). In the amended complaint, Ms. Smith also seeks to clarify the conspiracy between CEC/PHWLV and Fennemore Craig, CEC/PHWLV's early involvement in targeting and harassing Ms. Smith along with Fennemore Craig who further harassed Ms. Smith by inserting her into Mrs. Peruzar's lawsuit, and the multi-faceted plan to defame and harass Ms. Smith, which highlights CEC/PHWLV's (including Ethan Thomas') unhealthy and harmful obsession with Ms. Smith.

**Background and Statement of Facts**

In November 2017, CEC and PHWLV, with the help of Fennemore Craig, was involved in the plot to terminate Mrs. Peruzar (Plaintiff's mother), which included dragging Ms. Smith into the matter to ensure that 1) Mrs. Peruzar was terminated and 2) Mrs. Peruzar would not be reinstated (Exhibit A and Exhibit B). CEC and PHWLV, aided by the law group Fennemore Craig, actively participated in maliciously targeting Ms. Smith as seen in exhibits. Between the time period of November 5, 2017 and November 15, 2017, Planet Hollywood and CEC rolled out their plan and began asserting that Ms. Smith was sending hateful and criminal messages under various aliases by relaying these messages through third parties. These accusations were made before Ms. Smith had reached out to the CEO to look into matters involving what was going on and the ongoing accusations, and long before defendants rolled out the next facet of their plan to begin filing lawsuits and TPOs against Ms. Smith, underscoring the great depths that the adverse parties went in trying to bring harm to Mrs. Peruzar and Ms. Smith (Exhibit C-Audio), (Exhibit D-witness testimony of defamation). The audio left for Ms. Smith contains several employees of CEC/PHWLV and Fennemore, at a public meeting held to harass and embarrass Mrs. Peruzar and cause harm to Mrs. Peruzar and Ms. Smith. Employees can be heard reading a contrived letter and asserting that Ms. Smith made the letter and had perpetrated other threats, made hundreds of threatening calls to several properties, and even

made calls/threats to an *internal* complaint system. This was done in front of several third parties as evidenced in **Exhibits A and B**. It can also be heard where, after making the vicious accusations, they forgot to even ask Mrs. Peruzar if she had a daughter so they turn back to make sure they ask and ensure that their research was correct. The hostility for Ms. Smith heard on the audio is frightening and deeply disturbing. Witness testimony in **Exhibit D**, also show that defendants called a third party, Teri Pringle (who had no relation to Ms. Smith) to accuse Ms. Smith of crimes (in November and December). **Teri Pringle's testimony also highlight defendants'** plan to use the accusations against Ms. Smith in order to terminate Mrs. Peruzar and make sure she would not be reinstated. Not only does it say **a lot that defendants' first call was to a third party with no relation to Ms. Smith**, but it says a lot that defendants asserted to Ms. Pringle that they could not hand over these alleged "threats" that were coming from Ms. Smith (perhaps because they did not create them yet).

Fennemore Craig assisted PHWLV and CEC in researching Mrs. Peruzar's background and located Ms. **Smtih's personal social profiles as evidenced in Exhibit A and Exhibit B**. CEC and PHWLV, with the help of Fennemore Craig concocted messages and distributed these messages citing Ms. Smith as the culprit. When CEC/PHWLV were put on notice to cease their baseless accusations several times, they continued on for several months (even after Ms. Smith had been hospitalized due to the criminal accusations a couple days after the termination of Mrs. Peruzar, which caused severe mental distress). After being released from the hospital. Ms. Smith reached out to the CEO for matters to be looked into without any resolution. A few months later, Fennemore Craig and CEC/PHWLV initiated the second phase of their plan by filing a frivolous lawsuit against Ms. Smith and 50 DOE defendants and filing TPOs, in which CEC and PHWLV had no substantive claim against Ms. Smith. After obtaining an attorney, CEC and PHWLV asked to enter an agreement in which all claims against Ms. Smith would be dismissed in exchange for Ms. Smith assuring that she would never issue threats/disparaging remarks or go near Ms. Radak (whom Ms. Smith did not even know at the time). The agreement also specifically absolved Ms. Smith of any wrongdoing. The lawsuit was clearly only to intimidate, defame, and harass Ms. Smith as a part of an intricate plan created by CEC/PHWLV and Fennemore Craig. The parties further agreed that any distribution of the agreement would cause irreparable harm and would allow any party to seek redress for breaking confidentiality (**Exhibit E**).

Mrs. Peruzar filed a lawsuit against CEC and PHWLV in November of 2018, and CEC/PHWLV and Fennemore Craig immediately returned to their harassment of Ms. Smith. Fennemore Craig, dispatched by CEC/PHWLV harassed Ms. Smith while waiting outside (in the shopping center) of a conference on December 17, 2018. Mrs. Peruzar did not include Ms. Smith or any matters concerning Ms. Smith in her litigation (**Exhibit F**) and **Ms. Smith did not wish to be a part of Mrs. Peruzar's litigation matters. In order to continue hara**ssing Ms. Smith, and in concert with CEC/PHWLV, Fennemore Craig added Ms. Smith as a witness in the litigation, once again dragging **Ms. Smith into matters concerning Ms. Smith's mother; this is further substantiated in the exhibited evidence showing** one of the letters Fennemore distributed with the confidential settlement agreement where Fennemore cites their intent to drag Ms. Smith into Mrs. Peruzar's litigation.

Fennemore Craig and CEC/PHWLV distributed the confidential settlement agreement to several individual and unrelated third parties before the start of any litigation and continued distributing the agreement; even distributing the settlement **to Mrs. Peruzar's former attorney** who had no relation to Ms. Smith **(Exhibit G).**

After Ms. Smith signed a witness affidavit (filed by Mrs. Peruzar on April 17, 2019) in support of an event that occurred concerning her mother and under absolute litigation privilege, Ms. Smith was harassed, threatened, and defamed by Fennemore Craig and CEC/PHWLV (also Ethan Thomas, the person dispatched by CEC/PHWLV) outside of a public proceeding. This incident had no connection to any litigation matters (further substantiated by the **fact that the district court denied Fennemore's attempts to** continue their plot to secure protective orders against Ms. Smith and to **use Mrs. Peruzar's litigation as a means to do so; the court found that** outside matters were not in the **district court's jurisdiction).**

After being harassed outside of the public proceeding, and to further cause harm to Ms. Smith (after failing in their first attempt), Fennemore Craig and its employees began filing TPOs against Ms. Smith in various locations in **connection with their clients CEC and PHWLV's earlier ploys to drag Ms. Smith into litigation by accusing** Ms. Smith of crimes and harassing Ms. Smith through her personal email. CEC/PHWLV (including Ethan Thomas) also filed a TPO against Ms. Smith in connection with Fennemore Craig. Fennemore Craig (and CEC/PHWLV) filed TPOs in the following order: April 18, 2019 (denied), April 19, 2019, April 22, 2019 (Las Vegas, automatically granted with no evidence and denied at hearing); Two May 1, 2019 filings (Reno, NV, automatically granted with no evidence and denied at hearing). There is no doubt that the defendants would have continued if Ms. Smith did not file a lawsuit requesting injunctive relief and asserting civil conspiracy (mistakenly left out of the CEC/PHWLV suit).

Fennemore Craig further instructed CEC/PHWLV to issue a vast and racist ban of Ms. Smith on May 3, **2019, which was sent to Ms. Smith's personal email, mailed to Ms. Smith's home, and mailed by certified mail to Ms. Smith's home by CEC** (*as if it was not already harassing*) alleging no facts for the ban and further substantiating that the ban was only **due to Ms. Smith's race (Exhibit I)**. CEC/PHWLV **dispatched unknown third parties to Ms. Smith's** home to further harass Ms. Smith and her family **(Exhibit H).**

**Ms. Smith's Complaint seeks redress for CEC/PHWLV's involvement in the conspiracy to target and harass Ms. Smith including filing TPOs (Ms. Smith's claims of civil conspiracy, abuse of process, malicious prosecution,** intentional infliction of emotional distress, and injunctive relief), the 2019 continuance of the conspiracy to file TPOs against Ms. **Smith (Ms. Smith's claims of civil conspiracy, abuse of process, malicious prosecution, intentional** infliction of emotional distress and injunctive relief), the racist ban of Ms. Smith from a place of public accommodation **(Ms. Smith's claim for violation of** state anti-discriminatory law and injunctive relief), the 2018-2019 (and likely 2017) distribution of a confidential settlement agreement which was also accompanied by letters to third parties asserting statements of fact that Ms. Smith committed crimes, statements and writings to third parties asserting Ms. Smith committed crimes, and the April 17, 2019 and December 17, 2018 harassment, slander, defamation, and threats **directed towards Ms. Smith in the presence of third parties (Ms. Smith's claims of defamation/per se, slander/per se,**

intentional infliction of emotional distress, civil conspiracy, abuse of process, malicious prosecution, breach of confidentiality, injunctive relief) .

**IV.     LEGAL STANDARD**

SLAPP (Strategic Lawsuit Against Public Participation) denotes a meritless lawsuit that a plaintiff initiates to chill a defendant's freedom of speech and right to petition under the first amendment. SLAPP plaintiffs file "solely for delay and distractions and to punish activists by imposing litigation costs on them"); see *Hull v. Rossi*, **13 Cal. App. 4th 1763, 1769 (1993) (defining a SLAPP suit as "one brought to intimidate and for purely political purposes.").** The anti-SLAPP statute was not intended to bar all litigation affecting First Amendment rights. Instead, it was enacted to encourage participation in matters of public significance and ensure that such participation would not be chilled through abuse of the judicial process. *Cal. Code Civ. P. § 425.16(a).*

**Nevada's Perspective**

The Nevada Supreme Court explained that the hallmark of a SLAPP lawsuit is that it is filed to gain a financial advantage over one's adversary by increasing litigation costs until the adversary's case is weakened or abandoned.  Under Nevada's anti-SLAPP statute, if a defendant believes a lawsuit against s/he is a SLAPP, s/he may file a motion to dismiss the case: if an action is brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in *direct connection* with an issue of public concern. **Nevada's anti-SLAPP statute is in line with Nevada's long-**held absolute privilege for defamatory statements made during the course of judicial and quasi-judicial proceedings. See *Shapiro v. Welt,* **133 Nev. 35 37, 389 P.3d 262, 268 (2017).**

In *Pope v. Fellhauer,* **No. 74428 (Nev. March 21, 2019),** the Nevada Supreme Court held that there is a **three-factor criteria in order to show actions were "based upon a good faith communication** in furtherance of the right to petition or the right to free speech in *direct connection* with an issue of public concern," **which the anti-SLAPP statute requires**. The three-factor test provides that communications are protected speech that: "**1) relate to an issue of public interest, 2) are made in a public forum, and 3) are either true or made without knowledge of their falsity."** Nevada's anti-SLAPP statute does not define public interest or public concern, so the Court adopted the reasoning outlined by California: **1)** public interest does not equate with mere curiosity, **2)** a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest; **3)** there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient; **4) the focus of the speaker's conduct should be the public interest rather than a mere effort to** gather ammunition for another round of private controversy; and **5)** a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people. **See *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,* 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013).** The Nevada Supreme Court determined that when Mr. Pope slandered Fellhauer online, he was simply making public his private feud with the Fellhausers. The court held that Mr. Pope failed to show a sufficient nexus between his allegations that the

Fellhauser's were abusive and engaged in potentially illegal behavior and his claim that he was warning the public/his other neighbors. The court found it significant that Mr. Pope engaged in name-calling: "it is unclear how calling the Fellhauers 'weird' 'wack-jobs' 'extremely mentally unstable' 'crazy' 'sick' conveyed anything other than 'a single [person being] upset with the status quo'...thus we cannot conclude that the derogatory remarks about his neighbors were directly related to an issue of public concern." Therefore, Mr. Pope's statements were not protected speech subject to an anti-SLAPP motion to dismiss. Individuals cannot hide behind anti-SLAPP laws when they engage in public mudslinging, name-calling, or *unfounded allegations of a criminal nature* (emphasis added).

### Ninth Circuit's Perspective When Dealing With Anti-SLAPP In Federal Court

The Ninth Circuit recently issued an opinion clarifying the standards applicable to anti-SLAPP motions in Federal Court. see *Planned Parenthood Federation of America v. Center for Medical Progress,* No. 16-16997 **(9th Cir. May 16, 2018).** In Planned Parenthood, the plaintiff alleged that the defendants had used fraudulent means to enter the plaintiff's conferences and obtain meetings with the organization's staff to create false and misleading videos. The defendants filed a motion to dismiss the claims under **Federal Rule of Civil Procedure 12(b)(6)** and a special motion to strike the complaint under California's anti-SLAPP statute, *Cal. Civ. Code § 425.16*. Under that statute, if the defendant can show the lawsuit targets protected activity, the plaintiff must show a "reasonable probability" of prevailing on its claims. Defendants can attack either the legal sufficiency of the complaint or present evidence demonstrating why the plaintiff cannot prevail.

The district court denied the anti-**SLAPP** motion. Because the defendants' arguments under *Rule 12* were identical to those in the anti-SLAPP motion, the district court concluded that it **need only assess the sufficiency of the plaintiff's complaint**. When the defendants raised factual defenses, the district court held questions of fact precluded dismissal.

The Ninth Circuit affirmed **the district court's decision and clarified the standards applicable to anti-SLAPP** motions in federal courts. Adopting the holding from a previously unpublished decision, the court held that if the anti-SLAPP motion attacks the legal sufficiency of the **plaintiff's complaint, a court evaluates the motion using the** standard under **Rule 12 and Rule 8**. *Slip. Op.* at 11 **(discussing *Z.F. v. Ripon United School District*, 482 F. App'x 239, 240 (9th Cir. 2012)).** If, on the other hand, a defendant's motion attacks the factual sufficiency of the claims, "then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Id.* (quoting Z.F., 482 F. App'x at 240). The Ninth Circuit emphasized the apparent inconsistencies between California's anti-SLAPP statute and the Federal Rules of Civil Procedure, holding that a contrary reading "would lead to the stark collision of the state rules of procedure with the governing Federal Rules..." And the court rejected the defendants' argument that a plaintiff is required to present evidence, holding that "if the defendants have urged only insufficiency of pleadings, then the plaintiff can properly respond merely by showing a sufficiency of pleadings, and there's no requirement for a plaintiff to submit evidence to oppose contrary evidence that was never presented by defendants." Even still, although Ms. Smith does not attach all evidence, she attaches evidence

necessary to support her claims as a show of her good faith in filing the instant lawsuit against defendants Caesar Entertainment, PHWLV, and Ethan Thomas.

**Standard of Review**

Because of the early stage at which the anti-SLAPP motion is brought and heard, the plaintiff enjoys "a degree of leeway in establishing a probability of prevailing on its claims" (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 530, 44, Cal. Rptr. 3d 517 (4th Dist. 2006)), quoting *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 823, 33 Cal. Rptr. 2d 446 (2d. Dist. 1994). If the plaintiff can show a probability of prevailing on any part of its claim, the cause of action is not meritless and will not be stricken. Once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff has established that its cause of action has some merit and the entire cause of action stands. (*Oasis West Realty LLC. v. Goldman*, supra, 51 Cal. 4th at 820 (quoting *Mann v. Quality Old Time Service, Inc*, 120 Cal. App. 4th 90, 106, 15 Cal. Rptr. 3d 215 (4th dist. 2004) (emphasis in original); *Bently Reserve L.P. v. Papaliolios*, 218 Cal. App. 4th 418, 426, 435 n.8, 160 Cal. Rptr. 3d 423 (1st Dist. 2013) (when a cause of action states multiple grounds for relief, the plaintiff may satisfy its obligation in the second prong by simply showing a probability of prevailing on any one of those grounds.)

Generally, *FRCP 8* only requires that Ms. Smith make a short and plain statement of the claims and pro se complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers. See *Erickson v. Pardus*, No. 06-7317 (2007); *Hebbe v. Pliler*, 611 F.3d 1202 (9th Cir. 2010).

**V.    ARGUMENT**

The defendants have failed to meet their burden under the standards from both Nevada and the Ninth Circuit. In fact, defendant's whole argument fails as it is based on a personal assertion that Ms. Smith's claims arise solely out of statements that were made during judicial hearings or in judicial writings to the court. Defendants' motion also raises several questions of fact, which precludes dismissal.

While, it cannot be denied that there have been multiple legal run-ins with Ms. Smith and defendants, Ms. Smith's causes of action do not arise out of any statements made during judicial proceedings or judicial writings. In fact, Ms. Smith's cause of action for civil conspiracy (pending) arises from the plan itself to harass and intimidate Ms. Smith (beginning in 2017) in which the several TPO filings and prior suit were a part of. Ms. Smith's claims of abuse of process and malicious prosecution arise out of the fact that defendants used the legal system for their nefarious purposes as a part of the plan to intimidate, harass, and defame Ms. Smith as illustrated above and in exhibits. Ms. Smith's cause of action for defamation/per se and slander/per se arise out of false statements of fact including but not limited to criminal accusations, false mental diagnoses, threats, distribution of a confidential settlement agreement, and name-calling that were directed towards Ms. Smith or directed to individual and unrelated third parties, about Ms. Smith, outside of the scope of any litigation. Ms. Smith's claim for violating state anti-discriminatory law arises out of the ban that CEC/PHWLV issued to Ms. Smith due to her race and as a part of their plan, in concert with Fennemore Craig, to intimidate, harass, and defame Ms. Smith. Ms. Smith's pending claim of breach of confidentiality arises out of defendants' breach of the confidential agreement. Ms. Smith's claims for injunctive relief and intentional infliction of

emotional distress rest on the previous claims in which the actions taken by CEC/PHWLV (including Thomas) in concert with Fennemore Craig have caused Ms. Smith to be hospitalized and suffer severe emotional distress, and Ms. Smith is entitled to injunctive relief due to the harm that the continued actions would cause her physically, mentally, and emotionally.

**From The Nevada Standard**

Defendants have failed to illustrate or assert that Ms. Smith seeks to gain a financial advantage over them by increasing litigation costs. **Further, it is incognizable how Ms. Smith's goal was to gain a financial advantage over a** multi-million-dollar corporation. Defendants have also failed to satisfy the prongs by failing to show that the claims in **Ms. Smith's lawsuit relate to an issue of public interest, were made in a public forum, and were either true or made** without knowledge of their falsity.

Specifically, defendants failed to show how: **(1)** their distribution of a confidential settlement agreement, attached to letters making statements of fact that Ms. Smith committed crimes, to individual and unrelated third parties relate to an issue of public interest/concern (meaning it does not equate with mere curiosity, it was of concern to a substantial amount of people, there was a degree of closeness between the challenged statement and the asserted public interest, that the focus was public interest rather than gathering ammunition for another round of private controversy, and that they did not turn private information into public interest by communicating it to a large amount of people); **(2)** their defamatory statements made to an unrelated third party in November and December of 2017 relate to an issue of public interest/concern (meaning it does not equate with mere curiosity, it was of concern to a substantial amount of people, there was a degree of closeness between the challenged statement and the asserted public interest, that the focus was public interest rather than gathering ammunition for another round of private controversy, and that they did not turn private information into public interest by communicating it to a large amount of people); **(3)** their harassment, name-calling/defamation, and threats directed towards Ms. Smith, outside of any legal proceedings, in 2017 and 2019 relate to an issue of public interest/concern (meaning it does not equate with mere curiosity, it was of concern to a substantial amount of people, there was a degree of closeness between the challenged statement and the asserted public interest, that the focus was public interest rather than gathering ammunition for another round of private controversy, and that they did not turn private information into public interest by communicating it to a large amount of people); **(4)** their involvement in conspiracies with Fennemore Craig (including to continue filing TPOs and filing a dismissed suit against Ms. Smith) to target Ms. Smith in 2017 and 2019 relate to an issue of public interest/concern (meaning it does not equate with mere curiosity, it was of concern to a substantial amount of people, there was a degree of closeness between the challenged statement and the asserted public interest, that the focus was public interest rather than gathering ammunition for another round of private controversy, and that they did not turn private information into public interest by communicating it to a large amount of people); and **(5)** their ban of Ms. Smith due to her race relates to an issue of public interest/concern (meaning it does not equate with mere curiosity, it was of concern to a substantial amount of people, there was a degree of closeness between the challenged statement and the asserted public interest, that the focus was public interest rather than gathering ammunition for

another round of private controversy, and that they did not turn private information into public interest by communicating it to a large amount of people). Defendants mainly make factual denials of events that occurred, which preclude dismissal.

Defendants failed to satisfy the second prong by failing to show that: **(1)** their distribution of the confidential settlement agreement, attached to letters making statements of fact, to individual and unrelated third parties, consisted of statements or events that occurred in a public forum; **(2)** their defamatory statements made to an unrelated third party in November and December of 2017 consisted of statements or events that occurred in a public forum; **(3)** that their harassment. name-calling/defamation, and threats directed towards Ms. Smith, outside of any legal proceedings, in 2017 and 2019 consisted of statements or events that occurred in a public forum; **(4)** how their involvement in conspiracies (including to continue filing TPOs against Ms. Smith and filing a dismissed suit) to target Ms. Smith in 2017 and 2019 consisted of statements or events that occurred in a public forum; and **(5)** how their ban of Ms. Smith due to her race consisted of statements or events that occurred in a public forum.

Defendants failed to satisfy the third prong by failing to show that: **(1)** their distribution of confidential settlement agreement, attached to letters making statements of fact, to individual and unrelated third parties were true or made without knowledge of their falsity; **(2)** their defamatory statements made to an unrelated third party in November and December of 2017 were true or made without knowledge of their falsity **(3)** their harassment. name-calling/defamation, and threats directed towards Ms. Smith, outside of litigation, in 2017 and 2019 were true or made without knowledge of their falsity; **(4)** how their involvement in conspiracies (including to continue filing TPOs against Ms. Smith and filing a dismissed suit) to target Ms. Smith in 2017 and 2019 were true or done without knowledge of their falsity; and **(5)** how their ban of Ms. Smith had anything to do with statements that were true or made without knowledge of their falsity.

Defendants actually don't address Ms. Smith's claims at all or offer any evidence to combat Ms. Smith's claims; instead, they create their own theories based on facts that they've created and issue factual contentions which preclude dismissal. In *Pope v. Fellhauer*, **No. 74428**, the Nevada Supreme Court held that defendants cannot hide behind anti-SLAPP, especially when allegations consisted of name calling and unfounded allegations of a criminal nature; they are not considered matters of public concern.

**From the Ninth Circuit Court's Standard**

Defendants' argument under **Rule 12** and anti-Slapp are the same. The Ninth Circuit has already concluded that the sufficiency of the plaintiff's complaint is the only thing that needs to be assessed in this case and that the anti-SLAPP motion which includes factual contentions precluded dismissal. Defendants attack the legal sufficiency and factual sufficiency of Plaintiff's claims as seen in the next subheading. The Ninth Circuit has already affirmed that attacks on the legal sufficiency of a claim must be evaluated under **Rule 12** and **8**, and that attacks on the factual sufficiency of a claim must be treated like a motion for summary judgment and Plaintiff must be allowed to conduct discovery.

**Addressing Specific Arguments in Defendants' Motion to Dismiss and Special Motion to Dismiss**

Defendants whole argument can be summed up to them asserting that all speech in contention was privileged due to them occurring during judicial proceedings, and that Ms. Smith failed to give enough facts for her causes of action. Ms. Smith has already asserted that her claims arise out of actions that defendants took outside of any proceedings (and Ms. Smith was not the subject of any proceedings involving Mrs. Peruzar as evidenced in **Exhibit F). The claims closest to even dealing with proceedings are Ms. Smith's Abuse of** Process and Malicious Prosecution claims, which concern defendants' malicious filings that were made without probable cause and for nefarious purposes. **Further defendants' argument that statements made preliminary to judicial proceedings under** *Ademiluyi v. Phillips* fail as the statements at issue were not connected to any judicial proceeding or intended judicial proceeding by defendants, as will be evidenced in the timeline, and defendants have failed to provide proof otherwise. ***FRCP 8*** only requires Ms. Smith to make a short and plain statement, and Ms. Smith has satisfied her burden.

Defendants assert that because justice court judges granted them automatic TPOs based only on their allegations and no evidence it means their allegations were true and that Ms. Smith committed crimes. The legal end of such proceedings is a hearing in which Ms. Smith presents her opposition. Defendants attempts were denied at hearing and justice court judges are currently under investigation for issuing even automatic temporary orders as they did not constitute stalking, harassment, or aggravated stalking on the part of Ms. Smith. Instead, these judges assisted defendants **in their unlawful goals because their representatives were quote "officers of the court who would not lie." As is evidenced, defendants'** premeditated plans to use the court system for nefarious purposes, to target Ms. Smith, which included criminal TPO proceedings which could have ended in Ms. Smith having a criminal record **are valid grounds for Ms. Smith's claims** of malicious prosecution and abuse of process. Further arguments by defense include:

1. ***Plaintiff only filed lawsuit to retaliate against defendants for filing MPO and TPO***. Although part of Ms. Smith's claims arise from abuse of process and malicious prosecution due to defendants' malicious plan to use the court as a weapon against Ms. Smith, all of **Ms. Smith's** other claims are not connected to litigation matters/legal proceedings. Directly related, defense argues that ***the filings were good faith filings***. This is a **factual contention left to a jury, which precludes dismissal. Whether proceedings are in good faith....is a** question of fact for the jury. ***Restatement (Second) of Torts §586 at Comment e, 248 (1976).***

2. ***Plaintiff acknowledged she was not banned until after she filed the lawsuit and Plaintiff was banned due to her conduct in litigation.*** Plaintiff only acknowledged that the letter containing the ban was sent to her after she filed a lawsuit, in a coordinated effort between CEC/PHWLV and Fennemore **Craig's to** intimidate, harass, and defame her as evidenced in the timeline. Plaintiff asserts that CEC/PHWLV banned her because of her race and CEC/ PHWLV has not provided proof otherwise because they cannot. There was no litigation conduct because Ms. Smith was not the subject of any litigation matters at the time. **Defendants'** letter is a clear, blanket, racist ban of Ms. Smith, denying her public accommodation in a place

13

open to the public, and it is directly against state law. These are also factual contentions that preclude dismissal.

3. ***The statements at issue were made in direct connection with an issue under consideration by a judicial body because they related to issues in the litigation and were directed to persons having some interest in the litigation; the defamatory communication was in some way pertinent to litigation; statements made before litigation are privileged.*** In addition to Ms. Smith's assertion herein that her claims do not arise from matters connected to litigation, defense's argument has several holes. First, there is no protection for "use of the legal process in an improper manner or primarily to accomplish a purpose for which it was not designed." ***Whiting, supra note 5***. Specifically, "an attempt to deprive a party of legal rights, intimidate, harass, or defame a party are not legitimate goals for which privilege can be applied." see also ***Post v. Mendel, 507 A.2d 351 356-57 (Pa. 1986)*** *(*Absolute immunity does not protect lawyers "against claims alleging the pursuit of litigation for the unlawful, ulterior purpose of inflicting injury on the plaintiff and enriching themselves and their client, despite knowledge **that their client's claim lacked merit.**")

For a statement to fall even within the *scope* of absolute litigation privilege it must be made to a recipient who has a significant interest in the outcome of the litigation or who has a role in the litigation. **see *Shapiro*, 133 Nev. at --------, 289 P.3d at 269.** CEC/PHWLV and Ethan Thomas' false statements of fact, that Ms. Smith committed crimes, to unrelated third parties, that were not involved in any litigation matters are not privileged. Their statements to Ms. Smith made outside on April 17, 2019 are also not privileged as they were not connected to any litigation. Defense also argued that they made the defaming statements to parties **in Mrs. Peruzar's case, but,** again, Ms. Smith was not **the subject of Mrs. Peruzar's litigation.** Defendants cannot hide behind litigation privilege concerning statements made that were not in connection to any court proceedings. In ***Bradley v. Hartford***, the plaintiff law firm brought a defamation action against a defendant **law firm for communications made regarding the plaintiff's actions in a past case. The defendant accused** the plaintiff of manufacturing evidence, suborning perjury and generally acting in an unprofessional and illegal manner during the adjudication of the past suit. The court held that the defamatory statements uttered outside of court were *not privileged* because the statements were made to persons without any interest in present or future suits against the defamed law firm (***Bradley v. Hartford Accident & Indemnity Co., 30 Cal. App 3d 818 (1973)***).

Defendants' litigation privilege defenses will be struck down due to a lack of intent to commence future litigation in good faith. **Defendants' abuse of the court system to target Ms. Smith was a part of an early** conspiracy by defendants (in connection with Fennemore Craig) after researching Ms. Smith and planning to use her as a means to retaliate against Mrs. Peruzar. In ***Striberg v. Raymond***, the Massachusetts Supreme Judicial Court adopted the Restatement (Second) of Torts view that litigation privilege only applies to **communications preliminary to proposed judicial proceedings that are "contemplated in good faith and under**

serious consideration." **370 Mass. 105 (1976)**; *Restatement (Second) of Torts §586 at Comment e*, **248 (1976)**. Again, the Court decided that whether or not proceedings were contemplated in good faith is a question of fact for the jury. In Striberg as well as the more recent Massachusetts case, *Meltzer v. Grant*, the juries found that defendants were not in good faith contemplating future litigation, and therefore litigation privilege did not apply. **370 Mass. 105; Meltzer, 2002 U.S. Dist. LEXIS 5514.** There is no way defendants could have ever been contemplating any proceedings against Ms. Smith in good faith as part of their conspiracy.

The Nevada Supreme Court noted that the purpose of the litigation privilege is to allow parties to speak freely and openly during litigation without the threat of being sued. They noted that the privilege, however, *only applies during judicial proceedings* to *statements that relate to the litigation*. The *party on the receiving end must also be interested in the proceedings and not an unrelated third party*.

Accordingly, defamatory comments made to outside observers of a lawsuit can form the basis for defamation claims. *Jacobs v. Adelson*, **130 Nev. Adv. Op 44 (May 30, 2014)**. Again, since Ms. Smith was **not a subject in Mrs. Peruzar's litigation, defamatory statements made to Ms. Smith** outside and made to third parties were not even in connection to any proceedings.

Plaintiff, Latonia Smith has established a prima facie case.

### Plaintiff's Cause of Action for IIED has Merit

Defendants' only assertion is that the actions taken by themselves were not extreme. This is a question of fact, appropriately decided by a jury. Ms. Smith incorporated by reference all proceeding paragraphs in each cause of action and has outlined the actions of defendants that have caused her severe emotional distress, up to and including **hospitalization. Defendants offer no evidence contrary to Ms. Smith's claim.** Ms. Smith has alleged this claim against all defendants and *FRCP 8* only requires Ms. Smith to make a short and plain statement, and Ms. Smith has satisfied her burden

### Plaintiff's Cause of Action for Defamation/Defamation Per Se has Merit

Defendants argue that Ms. Smith does not have a claim for defamation/per se or slander/per se because the actions do not live up to the definition of "per se." In Nevada, accusations of a criminal nature or false medical diagnoses are "per se" actions and Ms. Smith has a valid claim. The false statements made to third parties (including but not limited to) Teri Pringle, Brandon Trout, Wade Beavers, Jerome Bowen, Ethan Thomas, and Shawna Braselton are parties that have nothing to do with Ms. Smith. Defendants argued that Ms. Smith failed to distinguish between who made the comments and that because Ms. Smith stated in her instant lawsuit that she sought mental health treatment it means that she was diagnosed with schizophrenia. Ms. Smith does not have any mental health diagnoses (and certainly not schizophrenia), **so defendants' assertions to third parties that she did is defamation/per and slander/per.** Ms. Smith specified the comments and who made them in her complaint and defendants have fair notice. The comments made on April 17, 2019 are further substantiated by a third party. Ms. Smith has alleged this

claim against all defendants and **FRCP 8** only requires Ms. Smith to make a short and plain statement, and Ms. Smith has satisfied her burden.

### Plaintiff's Cause of Action for Slander/Slander Per Se

Defendants argue that Ms. Smith does not have a claim for defamation/per se or slander/per se because the actions do not live up to the definition of "per se." In Nevada, accusations of a criminal nature or false medical diagnoses are "per se" actions and Ms. Smith has a valid claim. The false statements made to third parties (including but not limited to) Teri Pringle, Brandon Trout, Wade Beavers, Jerome Bowen, Ethan Thomas, and Shawna Braselton are parties that have nothing to do with Ms. Smith. Defendants argued that Ms. Smith failed to distinguish between who made the comments and that because Ms. Smith stated in her instant lawsuit that she sought mental health treatment it means that she was diagnosed with schizophrenia. Ms. Smith does not have any mental health diagnoses (and certainly not schizophrenia), **so defendants' assertions to third parties that she did is defamation/per and slander/per.** Ms. Smith specified the comments and who made them in her complaint and defendants have fair notice. The comments made on April 17, 2019 are further substantiated by a third party. Ms. Smith has alleged this claim against all defendants and **FRCP 8** only requires Ms. Smith to make a short and plain statement, and Ms. Smith has satisfied her burden.

### Plaintiff's Cause of Action for Abuse of Process has Merit

Defendants assert that Ms. Smith does not mention ulterior motives. Ms. Smith incorporates all preceding paragraphs and an ulterior motive is plead on the face of her complaint. Ms. Smith has alleged this claim against all defendants and **FRCP 8** only requires Ms. Smith to make a short and plain statement, and Ms. Smith has satisfied her burden

### Plaintiff's Cause of Action for Malicious Prosecution has Merit

Defendants argue that civil protective orders are not the basis for criminal proceedings. A TPO is not a CPO; it is a criminal proceeding based on criminal charges of stalking, harassment, and aggravated stalking. The legal end **of such proceedings is a hearing for an extended order which, if granted, would be placed on Ms. Smith's criminal** record. Even still, malicious prosecution can be plead for civil and criminal cases that are continued in bad faith. Just as an action for malicious prosecution will lie where a person commences an action without an objectively reasonable basis, an action will also lie where a person wrongfully continues a civil proceeding without probable cause. **Nelson v. Miller, 607 P.2d 438, 433 (Kan. 1980). NRS 199.310** further states that a person can be guilty of malicious prosecution if that individual "maliciously, and without probable cause, causes or attempts to cause another person to be arrested or to **face legal proceedings in connection with a crime** for which the accused is actually innocent.". TPOs are legal proceedings in connection with crimes. Ms. Smith has alleged this claim against all defendants and **FRCP 8** only requires Ms. Smith to make a short and plain statement, and Ms. Smith has satisfied her burden.

### Plaintiff's Cause of Action for Violation of Federal and State Law has merit

CEC/PHWLV only state that they did not ban Ms. Smith due to her race. Ms. Smith alleges that they did, thus this is a factual contention which precludes dismissal. CEC/PHWLV also provides no evidence to the contrary.

Defendants' went beyond the bounds of anything that is/should be accepted in a civilized society. Defendants' ban of Ms. Smith is no different than the Jim Crow laws of the 19th and 20th century. **NRS 651.070** specifically states that all persons are entitled to the full and equal enjoyment of the goods, services, facilities, **privileges**, advantages and accommodations of any place of public accommodation, without discrimination or segregation on the ground of **race**, color, religion, national origin, disability, sexual orientation, sex, gender identity or expression. Ms. Smith has clearly been denied full and equal enjoyment due to her race. **NRS 651.080** further provides that any person is guilty of a misdemeanor who: (a) **withholds**, **denies, deprives**, or **attempts to withhold**, deny or deprive any other person of any right or privilege secured by NRS 651.070 or 651.075; (b) **intimidates, threatens,** coerces or **attempts to threaten, intimidate**, or coerce any other person for the purpose of **interfering with any right or privilege secured by NRS 651.070;** or (c) **punishes or attempts to punish** any other person for **exercising or attempting to exercise any right or privilege secured** by NRS 651.070 or 651.075. **NRS 651.090** further provides relief for Ms. Smith stating: any person who: (a) withholds, **denies, deprives, or attempts to withhold, deny or deprive** any other person of any right or privilege secured by NRS 651.070 or 651.075; (b) **intimidates, threatens,** coerces, or **attempts to threaten, intimidate**, or coerce any other person for the purpose of interfering with any right or privilege secured by NRS 651.070 or 651.075; or (c) **punishes or attempts to punish** any other person for exercising or attempting to exercise any right or privilege secured by NRS 651.070 or 651.075, is liable to the person whose rights pursuant to NRS 651.070 or 651.075 are affected for actual damages to be recovered by a civil action in a court in and for the county in which the infringement of civil rights occurred or in which the defendant resides. In an action brought pursuant to this section, the court may also grant equitable relief it considers appropriate, including temporary, preliminary, or permanent injunctive relief, against the defendant; (b) award costs and reasonable **attorney's fees to the prevailing party. Defendants' actions set a dangerous trend, allowing them to ban any African** American they see fit and alleging that it was not due to their race while providing no reasons/proof otherwise. Ms. Smith has alleged this claim against defendants CEC/PHWLV only and **FRCP 8** only requires Ms. Smith to make a short and plain statement, and Ms. Smith has satisfied her burden.

### Plaintiff's Cause of Action for Permanent Injunctive Relief has merit

Defendants assert that because all of Plaintiff's other claims fail, her claim for injunctive relief fails, which again imposes questions of fact. Injunctive Relief has been a cause of action in several cases and courts normally accept it as a cause of action if it is not standalone. see **Vrabel v. JP Morgan Chase Bank, N.A.**, No. C-C-09-1278 MMC **(N.D. Cal. Aug. 6, 2009)** (Fourth cause of action for injunctive relief); see **Roylene Ray and Kelly Cannon v. Bluehippo Funding LLC and Joseph Rensin** (citing several causes of action for injunctive relief premised on other causes of action). In **Sergio Palomo vs. Joseph Demaio et al.,** the court refused to accept defendant's assertion that plaintiff misconstrued injunctive relief as an independent cause of action because the request rested on a refusal to turn over trade secrets and was premised **on a breach of contract. Ms. Smith's claim for permanent injunctive relief** is premised on her preceding claims (which is why it is made last) **and Ms. Smith's additional claims of breach of** confidentiality and civil conspiracy; **it is not standalone, as Plaintiff's** preceding causes of action can withstand a

17

motion to dismiss. Ms. Smith has alleged this claim against all defendants and **FRCP 8** only requires Ms. Smith to make a short and plain statement, and Ms. Smith has satisfied her burden.

## VI.   PLAINTIFF IS ALTERNATIVELY ENTITLED TO DISCOVERY

Even with limited information, Ms. Smith has demonstrated a prima facie case. But this is also a case in which discovery should be allowed before an anti-SLAPP motion is decided. Defendants makes several factual contentions, in which the Ninth Circuit has already concluded discovery must be allowed.

## VII.   PLAINTIFF SHOULD BE AWARDED FEES

But this Court need not do so, as defendants already fails to satisfy either of the three prongs of the anti-SLAPP criteria. Defendants' motion should thus be denied. Moreover, as noted, defendants' motion is also frivolous, as the motion does not address any of the claims of Ms. Smith's suit, but defendants' own theories that Ms. Smith's suit is arises from statements and writings of filings made in judicial proceedings. Defendants should accordingly be ordered to pay Ms. Smtih's fees in opposing the motion, including travel mileage and postage.

## VIII.   OPPOSITION TO DEFENDANTS' REQUEST TO TAKE JUDICIAL NOTICE

Defendants ask this Court to take judicial notice of certain documents filed in connection with their motion to dismiss. It is unclear whether defendants want this court to take judicial notice of all exhibits, but defendants do make a request on page 8:6-7 of their motion. **Under Fed. R. Evid. 201**, where the truth of the documents is disputed or capable of dispute, judicial notice would be reversible error. **Lee v. City of Los Angeles, 250 F.3d 668, 690 (9ᵗʰ Cir. 2001).** Documents referenced in the complaint may be considered under the incorporation rule, but judicial notice of the truth of any document submitted is not permitted. Documents not referenced in the complaint may not be considered at all. **Branch v. Tunnell, 14 F.3d 449 (9ᵗʰ Cir. 1994).**

Accordingly, with respect to defendants' Request for Judicial Notice, Plaintiff opposes defendant's request for judicial notice of Exhibits B (in their motion to dismiss) and Exhibit B, E, F (in their special motion to dismiss) to the extent that they are offered for the truth of the matters asserted therein. Plaintiff further oppose all references to Exhibits and defendants' argument in their motion to dismiss that rely upon such exhibits because they are extraneous matters not **referenced in the Plaintiff's Complaint and/or have nothing to do with Plaintiff's claims.**

### Argument

**Judicial Notice of the Truth of Matters Set Forth in the Contents of Documents Is Not Permitted, Incorporation is Proper**

Under **Fed. R. Evid. 201**, a judicially noticed fact must be one not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. **Lee, 250 F.3d at 690**. Here, the contents of the documents offered by defendant are not judicially noticeable because the truth of the matters asserted therein is not easily determinable by the Court. All of these documents offered by defendants are self-serving documents created by defendant or third parties in connection with defendant, the accuracy of which are objectionable and cannot easily be verified. **Branch, 14 F.3d at 455.**

Although judicial notice of the truth of disputed or disputable documents is not permitted, the Court can consider the entirety of a document when portions of it are referenced in the complaint under the incorporation rule. *Id.* **At 454**. The Court may consider documents filed with the motion that are referenced in or necessarily relied upon in a complaint, even if not directly mentioned, under the Branch incorporation rule. ***Parrino v. FHP, Inc.*, 146 f.3d 699, 705-06 (9ᵗʰ Cir. 1998).** Judicial notice of the truth of such documents would, however, be improper because the contents are or can be disputed or are susceptible to conflicting inferences. ***Lee*, 250 F.3d at 688-90.** Moreover, even under the broader incorporation rule of Parrino a filing that is not referenced in the complaint nor necessarily relied upon, cannot be considered at all. **146 F.3d at 705-06.**

In this case, defendants seek to have court filings judicially noticed. Plaintiff, however, allege that statements contained in Exhibits B (in their motion to dismiss) and Exhibit B, E, F (in their special motion to dismiss) proffered by defendant are false or misleading and contain untrue statements of material fact, omit material facts, and omit facts necessary to make the statements therein not misleading. Judicial notice of the truth of these documents would indeed be improper. ***Lee*, 250 F.3d at 689-90.** In *re Vantive Corp. Sec. Litig.*, **110 F. Supp. 2d 1209, 1213 n.8 (N.D. Cal. 2000),** the judge aptly ruled that when defendants seek to challenge the accuracy of the allegations in a complaint, judicial notice is improper at the motion to dismiss stage. The Ninth Circuit likewise holds that it is improper to judicially notice documents challenged as inaccurate. ***Cooper v. Pickett*, 137 F.3d 616, 623 (9ᵗʰ Cir.  1998).**

**Judicial Notice Is Improper For Document Not Referenced in the Complaint**

It is well established that a defendant may not rely on materials not referenced in the complaint to dispute the complaint's factual allegations. *Id.* **At 622; *Branch*, 14 F.3d at 453**. A document is outside of the complaint if its **contents are not alleged in the complaint**. *Cooper*, **137 F.3d at 622.** The Plaintiff has not alleged the contents of any of the disputed exhibits that defendant is seeking to have judicially notice, largely, because Plaintiff's claim do not arise from the contents of judicial filings or statements made in judicial proceedings. Also, at the motion to dismiss stage, judicial notice of such documents would further convert the motion into one for summary judgment. *Id.*; see, e.g. ***Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458-59 (9ᵗʰ Cir. 1995).**

By improperly seeking to place before the Court documents and contentions of purported fact well beyond the four corners of the Complaint, defendants attempt to gain an improper advantage to the undue prejudice of plaintiff, attempting to hamstring plaintiff with the stay provision while simultaneously asking the Court to determine factual **issues in the context of a strictly procedural motion. If the Court considers defendant's contentions of purported fact,** equity requires that the Plaintiff be allowed to complete discovery. If this Court considers the contested Exhibits B (in their motion to dismiss) and Exhibit B, E, F (in their special motion to dismiss) **in determining defendant's motion,** plaintiff respectfully requests that she be allowed to complete discovery.

**Conclusion**

For the foregoing reasons, plaintiff respectfully request that this Court deny defendant's requests for judicial notice.

**IX.    PLAINTIFF'S CROSS MOTION FOR LEAVE TO AMEND COMPLAINT**

Under **FRCP 15(a)**, the Plaintiff moves for leave to amend her complaint to add two causes of action and to clarify **CEC/PHWLV's** early involvement with Fennemore Craig **in the targeting of Ms. Smith. As Ms. Smith's** amendments do not contain any of the four factors—bad faith, undue delay, prejudice to opposing party, or futility— **that would cause a motion to amend to be denied, Ms. Smith's cross motion should be granted.** ***Griggs v. Pace Am. Grp., Inc.*** **170 F.3d 877, 880 (9ᵗʰ Cir. 1999).** Also, the "determination should be performed with all inferences in favor of granting the motion." *Id.*

### Cause of Action for Breach of Confidentiality

Ms. Smith seeks to add this cause of action to add clarity to the case. Ms. Smith has already asserted that CEC/PHWLV (including Thomas) breached the confidential settlement agreement when they distributed the agreement to several third parties attached to a letter also accusing Ms. Smith of crimes, outside of any litigation. CEC/PHWLV widely distributed the agreement to third parties who would not have otherwise had possession of the agreement since the agreement was only signed between CEC/PHWLV, Radak (part of CEC/PHWLV) and Ms. Smith. CEC/PHWLV distributed this agreement from 2018-2019 and agreed that such distribution would cause **irreparable harm, allowing either party to recover for damages. Thus, Ms. Smith's cause of action for breach of** confidentiality is actionable.

### Cause of Action for Civil Conspiracy

CEC/PHWLV (including Thomas) became involved in the plot to harass, defame, and intimidate Ms. Smith with their associates Fennemore Craig (includes Pierce), which included distributing the confidential settlement agreement, filing TPOs, and filing a baseless suit against Ms. Smith. Defendants and their associates intended to accomplish the unlawful goal of retaliating against Mrs. Peruzar and intimidating, harassing, and defaming Ms. Smith, which is further evidenced in exhibits. The defendants, along with their associates, upon agreement, accomplished their unlawful goal causing severe harm to Ms. Smith. The actions of defendants were deliberate leading directly to the damages sustained by Ms. Smith. **Ms. Smith's cause of action for civil conspiracy is actionable.**

**Mrs. Smith's Second Amended Complaint is attached as Exhibit J.**

**X.    CONCLUSION**

**The Court should deny Fennemore's special motion to strike, motion to strike, and request for judicial notice on** the merits and enter a fee award against defendant. Ms. Smith should be allowed to complete discovery and amend her complaint based on the evidence attached herein and the case should be allowed to be adjudicated on the merits at trial.

Dated this 9th day of August 2019

/s/ Latonia Smith
LATONIA SMITH
9748 CANYON LANDING AVE.
LAS VEGAS, NV 89166

1

CERTIFICATE OF SERVICE

2      I certify that I am serving a true and correct copy of the attached OPPOSITION TO MOTION TO

3 DISMISS AND CROSSMOTION on the parties set forth below by:

4 _____          placing an original or true copy thereof in a sealed envelope with the correct prepaid

5                   postage affixed for collection and mailing in the United States Mail, at Las Vegas,

6                   Nevada.

7 ___X___          Certified Mail, Return Receipt Requested of the document(s) listed above to the

8                   person(s) at the address(es) set forth below

9 _____          E-service

10 _____         Personal delivery through a process server of the document(s) listed above to the

11                  person(s) at the address(es) set forth below

12

13 Riley Clayton                              Alex Fugazzi

14 HALL JAFFE & CLAYTON, LLP

15 7425 Peak Drive

16 Las Vegas, NV 89128

17 702-316-4111

18 rclayton@lawhjc.com

19 DATED this 9TH day of August 2019

20                                           ___/s/ Latonia Smith___

21                                           Plaintiff, In Proper Person

22

23

24

25

26

27

28

## AFFIDAVIT OF LATONIA SMITH IN SUPPORT OF OPPOSITION

State of **Nevada**

County of **Clark**

1. I, LATONIA SMITH, hereby swear under the penalty of perjury that the assertions of this affidavit are true.

2. Attached to this motion as **Exhibit A** is a true, accurate, and complete copy of the letter received from PHWLV management.

3. Attached to this motion as **Exhibit B** is a true, accurate, and complete copy of the letter received from PHWLV employees.

4. Attached to this motion as **Exhibit C** is a true, accurate, and complete copy of the audio left to me.

5. Attached to this motion as **Exhibit D** is a true, accurate, and complete copy of third party witness **testimony corroborating defendants' defamation and plan to use me to terminate Mrs. Peruzar** and prevent Mrs. Peruzar from being reinstated.

6. Attached to this motion as **Exhibit E** is a true, accurate, and complete copy of the portions of the settlement agreement.

7. Attached to this motion as **Exhibit F is a true, accurate, and complete copy of Mrs. Peruzar's** lawsuit.

8. Attached to this motion as **Exhibit G** is a true, accurate, and complete copy of the letter sent by Fennemore Craig (in concert with CEC/PHWLV including Thomas) along with copies of the settlement agreement to an individual and unrelated third party.

9. Attached to this motion as **Exhibit H** is a true, accurate, and complete copy of the declaration of Annecer Peruzar.

10. Attached to this motion as **Exhibit I is a true, accurate, and complete copy of the Caesar's Ban** Letter.

11. Attached to this motion as **Exhibit J** is a true, accurate, and complete copy of Second Amended Complaint.

I declare, under the penalty of perjury and under the laws of the State of Nevada, that the foregoing is true and correct.

SUBSCRIBED AND SOWRN to before me

This _____ day of August 2019

By Latonia Smith

LATONIA SMITH

**STATE OF NEVADA   COUNTY OF CLARK**
**SIGNED AND SWORN BEFORE ME ON THIS**
9 DAY OF August , 2019
BY Latonia Dyshawna Smith

, **NOTARY PUBLIC**

MARCIA HUNGERFORD
Notary Public - State of Nevada
County of Clark
APPT. NO. 03-79895-1
My App. Expires Jan. 22, 2023

23