# EXHIBIT A-LETTER FROM PHWLV MANAGEMENT

Received Dec. 13

Ms. Latonia Smith,

I work in management at Planet Hollywood and I am remaining anonymous in this letter to avoid becoming a target. I have been involved with the incident surrounding and. Peruzar who I'll conclude is your mom. The managers involved with your mom are planning to target you after doing research on Ms. Peruzar which resulted in your finding. I was a part of the meeting where this was decided. I am not disclosing the meeting date to avoid being identified, but it did occur in November. The meeting started off discussing the incident with Ms. Peruzar, but quickly descended into talk that I considered deeply disturbing. At the meeting talk was had about targeting you or your brother, Mr. Smith, but they identified you and located your web profiles. What I've heard so far is that they plan to make up some stories to file criminal complaints. The current plan is to work with a law firm called Fenni More and Craig. Fenni More is also involved in the disturbing talks. Two attorneys were talking about how to go about the process to get this accomplished. I can't say if this is actually going to be carried out. If anything keep this letter to somewhat prove your innocence. Anonymous complaints have already been filed against these managers and the Fenni More attorneys. I am sorry that this has to be anonymous but I hope this helps you Ms. Smith should you find yourself in any troubles.

# EXHIBIT B-LETTER FROM PHWLV EMPLOYEE

Reversed

Dev 13



Tony please listen to the enclosed audio that was taken during a meeting that Planet Hollywood had with a handful of employees and Anecer in November.

I am a employee at Planet Hollywood. I am not trying to harass you. I did just wanted to warn you. The Planet Hollywood managers is planning to set you up more and use you as another reason to fire Anecer. One of the girls heard this directly from manager Laura. We have all been fighting for Anecer to get her job back because she is a good employee and what they did to Anecer was so nasty. We all get tips on the table and then they lie and put in tip envelope after they fire Anecer. Just be careful hunny. Anecer always talk about how successful her kids are. These people are dangerous and allot of people don't want to see them attach you to this nonsense. The note that they read in audio was made by a manager name Samantha. She made it and asked her friend to send it with different name. They know you because they looked up you before. Listen to the audio and hear how they were telling and accusing you in front of everybody. This was November after Anecer suspensión. It was plan by Samantha and managers to make the note. I know that all of the managers are friends it was sent by them. Go tell the police or try to tell Planet Hollywood corporation. Sad that these manager still treat us Hispanic and black like dirt and are racists. A lot of employee like Anecer and for Anecer and family.

They don't like Anecer and you now. These people are nasty and should not be manager.

God Bless

# EXHIBIT C-AUDIO CEC PHWLV FENN



# EXHIBIT D-
# TERI PRINGLE WITNESS

1          MS. PIERCE:  Objection as to form.

2      A.  I don't know about that.

3  BY MS. PERUZAR:

4      Q.  Do you think it's possible that these letters

5  were being sent by Planet Hollywood or Caesars themself?

6      A.  I have no idea.  I never saw the letters.

7          MS. PIERCE:  Objection as to form.  Calls for

8  speculation and argumentative.  Lacks foundation.

9          MS. WEBER:  And just to keep a clean record,

10 please allow some time for counsel to make her objection

11 for the court reporter.

12     A.  I don't know anything about letters.  I never

13 saw them.

14 BY MS. PERUZAR:

15     Q.  So you said they had called you concerning the

16 letters or the e-mail.  Was it letters or e-mail?

17     A.  I think it was e-mail or Facebook.  I'm not

18 sure.

19     Q.  And they haven't sent you the e-mail or

20 letter?

21     A.  No.

22         MS. PIERCE:  Objection as to form.

23 BY MS. PERUZAR:

24     Q.  So can it be possible that those e-mails could

25 have been sent by an employee?

1    Q.  Has Ms. Peruzar at any time provided to the

2    Union any statements about her employment with Planet

3    Hollywood?

4        A.  What do you mean?

5        Q.  Anything in writing whatsoever?

6        A.  Just when she filed her grievance.

7        Q.  So we were looking at Exhibit 2 earlier, which

8    I believe is a one-sentence handwritten note from

9    Ms. Peruzar.

10           Is that what you're referring to?

11       A.  Yes.

12       Q.  Other than that, has Ms. Peruzar ever sent

13   anything to the Union in writing to discuss her

14   employment with Planet Hollywood?

15       A.  Not that I can recall.

16       Q.  What about Ms. Peruzar's daughter?  To your

17   knowledge, has the Union ever received any statements

18   from Ms. Peruzar's daughter?

19       A.  No.

20       Q.  Okay.  You mentioned earlier that sometimes

21   when a grievance comes in and it's about a suspension,

22   the Union will hold the grievance and then amend it

23   later to include a termination.

24           Do you remember that?

25       A.  Yes.

1    go, so she thought everything was okay.

2         Q.  Were you present when Ms. Peruzar was asked by

3    Araceli Chavez about the missing money?

4         A.  No.

5         Q.  So what you're testifying about is what

6    Ms. Peruzar told you later had happened?

7         A.  And the company.  They verified that she

8    did -- they called her.

9         Q.  So Planet Hollywood, as part of its

10   investigation, asked Ms. Peruzar about the missing money

11   and Ms. Peruzar said she thought it was a tip, and from

12   then on Planet Hollywood carried on its investigation;

13   is that right?

14        A.  Yes.

15             MS. WEBER:  Objection.  Form.

16             MS. PERUZAR:  What was the answer to that?

17   I'm sorry.

18        A.  Yes.

19   BY MS. PIERCE:

20        Q.  You said there was a point where somebody from

21   Caesars or Planet Hollywood talked to you about

22   Ms. Peruzar's daughter; is that right?

23        A.  They made comments.

24        Q.  Who from either of those companies made a

25   comment to you about Ms. Peruzar's daughter?

Teri Lynn Pringle                              Annecer Peruzar v. Caesars Entertainment Corporation, et al.

1          A.  I think it started from Samantha and Yolanda.

2          Q.  Samantha was employed at Planet Hollywood; is

3    that right?

4          A.  Yes.

5          Q.  And when Ms. Mationg talked to you about

6    Ms. Smith, was it your understanding she was also

7    talking to you on behalf of Planet Hollywood?

8          A.  Can you repeat that?

9          Q.  Sure.

10         When Ms. Mationg was speaking to you about

11   Ms. Peruzar's daughter, was it your understanding that

12   Ms. Mationg was speaking to you on behalf of Planet

13   Hollywood?

14         A.  Yes.

15         Q.  What specifically did Ms. Radak say to you

16   about Ms. Peruzar's daughter?

17         A.  I remember her saying there was some Facebook

18   post or something from her daughter, and I asked for

19   those.  They said they will not give them to me because

20   it's not the reason she's being terminated.  And I then

21   told them then they cannot use it for a reason not to

22   bring her back and they can't use it in the arbitration.

23         Q.  So what Ms. Radak said to you was that there

24   were some Facebook posts from the daughter.  You then

25   asked for them, Planet Hollywood would not provide them,

1   and you said then, "You can't use them as a basis for

2   Ms. Peruzar's termination."

3   Have I accurately summarized the conversation?

4         A.   No.

5         Q.   Please tell me what happened.

6         A.   The company told me, "This is not the basis

7   for her termination," so it's not part of her grievance.

8   And I told them, "Then you can't use it as a basis for

9   not bringing her back and you can't use it in

10  arbitration."

11        Q.   Okay.  So I want to make sure I got it

12  correct.

13             The first thing that Ms. Radak said to you was

14  that there was a Facebook post from Ms. Peruzar's

15  daughter; is that right?

16        A.   Yes.

17        Q.   You then asked for a copy of the Facebook

18  post; is that right?

19        A.   Yes.

20        Q.   And Planet Hollywood said that it would not

21  provide the post because it wasn't the reason that

22  Ms. Peruzar's employment was terminated?

23        A.   Yes.

24        Q.   And at that point, you said then the company

25  cannot use the post as a basis for not bringing

1    Ms. Peruzar back and can't use it in arbitration; is

2    that right?

3         A.  Yes.

4         Q.  Is there anything else about the conversation

5    you had with Ms. Radak other than what we just talked

6    about?

7         A.  No.

8         Q.  Did Ms. Radak tell you what was said inside

9    the Facebook post?

10        A.  No.

11        Q.  You also said that Yolanda Mationg had a

12   conversation with you about Ms. Peruzar's daughter.  Is

13   it the same conversation we just discussed with

14   Ms. Radak or was it a separate conversation?

15        A.  We had a separate conversation.

16        Q.  And what did Ms. Mationg say to you in the

17   separate conversation in which she talked to you about

18   Ms. Peruzar's daughter?

19        A.  She called me Christmas morning and said I

20   need to do something, to talk to Annecer about her

21   daughter because she's still sending posts.

22        Q.  What did you say in response?

23        A.  I told her I cannot control her daughter, that

24   she would have to find another way.

25        Q.  Was there anything else that you discussed

Teri Lynn Pringle                                    Annecer Peruzar v. Caesars Entertainment Corporation, et al.

1    with Ms. Mationg about Ms. Peruzar's daughter other than

2    what you've just told me?

3         A.   I don't think so.

4         Q.   Did Ms. Mationg tell you what was in the

5    subsequent posts that she was calling about?

6         A.   No, just threats of some sort.  I don't know.

7         Q.   Did Ms. Mationg use the word "threats"?

8         A.   Yes.

9         Q.   But you don't know what kind of threats they

10   were?

11        A.   No.

12        Q.   Do you know how it is that Planet Hollywood

13   came to believe that Ms. Peruzar's daughter was the one

14   sending the Facebook posts?

15        A.   No.  Her name was on it, I think.  I don't

16   know.  I really don't.

17        Q.   Other than those two conversations -- one with

18   Ms. Radak, one with Ms. Mationg -- has there been any

19   point where anyone from Planet Hollywood or Caesars

20   Corporation talked to you about Ms. Peruzar's daughter?

21        A.   No.

22        Q.   What was your reaction when you heard that

23   Ms. Peruzar's daughter had sent a threat?

24        A.   I don't know I had a reaction, other than

25   saying, "I need to see that."

# EXHIBIT E-
# PARTS OF SETTLEMENT
# AGREEMENT

4.     Confidentiality.   The Parties and their attorneys represent, warrant and agree that the terms and contents of this Agreement and all information and evidence elicited or exchanged during the Dispute and in negotiating this Agreement are and shall be treated as confidential and shall not be disclosed, in any way used or described or characterized to any other person or entity except the parties hereto as described herein. This confidentiality provision and agreement is a material term of this Agreement, breach of which the Parties hereby agree will cause the Parties irreparable harm. Notwithstanding the foregoing, in the event of any further threatening or disparaging comments made against Ms. Radak or Caesars, Ms. Radak and/or Caesars shall have the right to disclose this Agreement to a court as part of a request for protective or other relief, complaint, or other pleading. In addition, the Parties agree that responding to unsolicited questions regarding this matter shall not constitute a breach of this provision or the Agreement.

5.   No Admission of Liability.   The Parties understand and acknowledge that this Agreement, and any and all consideration given, constitutes a compromise and settlement of disputed claims and that entering into and executing this Agreement shall not be deemed or construed to be an admission of the truth or falsity of any claims made or which could have been made or an acknowledgment or admission of liability by any party.

2.     <u>Notice of Suspected Breach.</u>   The Parties agree that due to the case posting communications on Social Media by other individuals under the guise of Defendant, Plaintiffs will notify Defendant or Defendant's attorneys, in writing, of any suspected breach of this agreement.

# EXHIBIT F-
# MRS. PERUZAR'S
# LAWSUIT

Electronically Filed
11/5/2018 6:32 PM
Steven D. Grierson
CLERK OF THE COURT

1 | **COMJD**

2 | ANNECER PERUZAR
| 9748 CANYON LANDING AVENUE
3 | LAS VEGAS, NV 89166
| 702-809-0988
4 | SHAYTONI9495@YAHOO.COM
| Plaintiff, in Proper Person
5
6
7 | **DISTRICT COURT**
| **CLARK COUNTY, NEVADA**
8 | A-18-784032-C
9 | ANNECER PERUZAR,
| Case No. Department 4
| Plaintiff, | Dept. No.
10
11 | -vs-
12 | CAESARS ENTERTAINMENT CORPORATION,
| a Delaware corporation; PHWLV, LLC d/b/a PLANET
13 | HOLLYWOOD RESORT AND CASINO, a Nevada
| limited liability company
14
15 | Defendants.
16
17 | **COMPLAINT AND JURY DEMAND**
18 | **Arbitration Exempt**
| **(Amount in Controversy Exceeds $100,000)**
19
20 | COME NOW Plaintiff Annecer Peruzar, an individual ("Mrs. Peruzar") (referred to
21 | herein as "Plaintiff") hereby complain and allege against Defendants as follows:
22 | **PARTIES**
23 | 1. At all relevant times Mrs. Peruzar was and is a resident of Clark County,
24 | Nevada

1

2. At all relevant times Caesars was and is a Delaware corporation authorized to do business in Nevada.

3. At all relevant times Planet Hollywood was and is a Nevada limited liability company authorized to do business in Nevada. Planet Hollywood is an affiliated entity with Caesars.

4. This Court has jurisdiction over the parties and venue is proper in this Judicial District under NRS 3.040.

## FACTS

A. Background

5. Plaintiff was employed at Caesars Entertainment-Planet Hollywood from November 19, 2012 until November 15, 2017. At the time of Plaintiff's termination, Plaintiff was employed as a Guest Room Attendant (GRA). Petitioner was terminated on November 15, 2017, for alleged theft, which was considered gross willful misconduct.

6. Plaintiff was asked by a stayover guest, in room 715, to clean room despite a do not disturb sign. Plaintiff agreed to clean the room. Plaintiff received and took a tip of $1.18 on October 31, 2017. The tip was left on the dresser, as change (4 quarters, 3 nickels, and 3 pennies).

7. On November 1, 2017, a floor manager at Caesars Entertainment-Planet Hollywood approached Plaintiff, around 2:00 pm, about a complaint submitted by room 715 around noon on November 1, 2017. The floor manager first asked if the Plaintiff had cleaned room 715 on the morning of November 1, 2017. The Plaintiff responded, indicating that she neither cleaned that room.

nor was she stationed there on the morning of November 1, 2017. The floor

manager then specified that on November 1, 2017, around noon, room 715

complained that $2.00 (in the form of bills) was missing off of the nightstand.

The Plaintiff, again, informed the floor manager that she neither entered or

was stationed at room 715 on the morning of November 1, 2017. The Plaintiff

informed the floor manager of the tip received the day prior from the same

room, but noted that the details of the relayed complaint did not concern her.

The floor manager acknowledged that another GRA was stationed at room

715 on the morning of November 1, 2017 (not the Plaintiff). The floor

manager vowed to seek out more information about the guest complaint,

however, this did not happen. Although, the guest was compensated to stay

until November, 2, 2017, no contact with the guest was made. On November

5, 2017, after 4 days of work (1 in which the guest was still present and no

contact with the Plaintiff or guest had been made), the Plaintiff was

suspended immediately pending an investigation. On November 15, 2017,

without any details from an investigation (and later revealed without an

investigation), the Plaintiff was terminated. The Plaintiff did not have any other

disciplinary actions on file.

## FIRST CAUSE OF ACTION

### INTENTIONAL TORT (FRAUD/MISREPRESENTATION/MALICE)

8.  Plaintiff hereby incorporate each and every preceding paragraph in this

Complaint as if set forth fully herein.

9. In Unemployment and Culinary documents, it was revealed that Caesars Entertainment Corporation and PHWLV engaged in making false statements, and in falsifying and submitting falsified documents in order to frame the Plaintiff for the crime of theft, which led to the Plaintiff's termination (under gross willful misconduct), subsequent denial of unemployment benefits, and an ongoing Culinary Union dispute (Caesars Entertainment Corporation and PHWLV refuses to reinstate Plaintiff's job, offer backpay, and/or a payout).

10. In order to justify the Plaintiff's termination and frame the Plaintiff for theft, Caesars Entertainment Corporation and PHWLV re-entered their system several times, the last time being January 10, 2018, at 2:26pm and 2:27pm, to make changes to the alleged initial complaint that was shown to be entered at 6:05 pm (not at noon) on November 1, 2017. January 10th is significant because this is the time in which Caesars Entertainment Corporation and PHWLV were presenting documents to the Culinary Union. In the documents submitted to Unemployment and Culinary, the actual screenshot of the complaint window is time stamped and the change is highlighted to match the Plaintiff's response to the floor manager on November 1, 2017; it was altered to say, "gst upset about missing change on dresser." The screenshot submitted by Caesars Entertainment Corporation and PHWLV further indicates that they can go back in to "change/delete/forward/finish/print" anything inputted into the system. In Unemployment and Culinary documents/testimony, Caesars Entertainment Corporation and PHWLV testified that the original, alleged guest complaint inputted by an unknown

front desk agent was $2.00 missing from the guest's nightstand, on

November 1, 2017. Caesars Entertainment Corporation and PHWLV also

testified that they never spoke to or got a written statement from the guest,

and that they had no way of getting in contact with the guest at all in order to

verify his complaint which did not concern the Plaintiff; this was false.

Caesars Entertainment Corporation and PHWLV removed 1 night from the

guest's bill and comped the guest an extra night; they also had the guest's

contact information and had plenty of opportunity to contact the guest, but

chose not to as this would undermine their fraudulent activity and their goal to

fire the Plaintiff. Caesars Entertainment Corporation and PHWLV testified that

the complaint was, instead, entered by the unknown front desk agent, and

that the altered complaint was all they had in order to terminate the Plaintiff.

11. In Unemployment documents and Culinary hearings, Caesars Entertainment

Corporation and PHWLV said they conducted an investigation. However, this

is not true. Instead, they testified that they did a floor walk, where they walked

up to the guest's room, saw a do not disturb sign, and concluded that no one

else could have gone into the guest's room except the Plaintiff. Caesars

Entertainment Corporation and PHWLV, purposefully, omitted that any GRA

has access to all rooms on their station, and ignored the fact that another

GRA (not the Plaintiff) was stationed at the room on the day and time of the

guest's complaint. Caesars Entertainment Corporation and PHWLV did not

question the GRA stationed at the room on November 1, 2017, they did not

question the guest, nor did they question the front desk agent (as they

1    testified that s/he was unknown). They simply committed fraud,

2    misrepresented evidence, and acted with malice in their intent to frame and

3    accuse the Plaintiff of theft, and any further documents submitted by them

4    which can be altered should be looked upon with suspicion.

5    12. In further fraud, malice, and misrepresentation, Caesars Entertainment

6    Corporation and PHWLV submitted portions of an outdated 2012 GRA

7    handbook, under the guise of the new 2015 handbook, which the Plaintiff

8    signed for, in order to justify their erroneous position that the Plaintiff engaged

9    in theft and violated company policies. Caesars Entertainment Corporation

10    and PHWLV further testified that the Plaintiff was lying about the lack of a tip

11    policy/tip envelopes, and that there were tip policies, as well as tip envelopes

12    in place at the time of the Plaintiff's employment. In fact, Caesars

13    Entertainment Corporation and PHWLV's 2015 GRA handbook has no

14    policies on removing tips from a stayover, nor policies on tip envelopes.

15    Caesars Entertainment Corporation and PHWLV had gotten rid of tip

16    envelopes for guests during the time of Plaintiff's employment (as reflected in

17    the changes from the 2012 to the 2015 handbook), and previous to the time

18    period of the alleged guest complaint. The 2015 handbook only has policies

19    regarding removing guests' belongings, in which a tip is not a part of. Under

20    federal and state law (NRS 608.160), a tip belongs to the employee. In

21    addition, current employees signed a petition and are still willing to testify that

22    Caesar's Entertainment Corporation and PHWLV did not have tip envelopes

23    at the time of the Plaintiff's employment, as they falsely testified to, with the

24

1    intent of misrepresenting information and damaging the Plaintiff's position in

2    seeking relief. Employees are also willing to testify that shortly after the

3    Plaintiff's termination, tip envelopes were reinstated, again, with the intention

4    of misrepresenting and deceiving the Plaintiff and other third parties. Caesars

5    Entertainment Corporation and PHWLV's falsified documents (constituting

6    fraud). Submittal of these falsified documents, false statements, and

7    purposeful misrepresentation of information, led to the Plaintiff's termination,

8    denial of unemployment benefits, and an ongoing dispute with Culinary Union

9    (Caesars Entertainment Corporation and PHWLV refuses to reinstate

10   Plaintiff's job, offer backpay, and/or a payout).

11   13. Caesars Entertainment Corporation and PHWLV, in their zeal to fire the

12   Plaintiff, who is one of few African Americans in the department, and who

13   testified that she was previously subject to hateful, racial remarks by the floor

14   manager and manager, committed fraud by making a false

15   representation/misrepresentation as to a past or existing fact—the altering and

16   submittal of the initial, alleged guest complaint which was not related to the

17   Plaintiff and misrepresentation of current policies and the current handbook,

18   at the time of the Plaintiff's employment. Caesars Entertainment Corporation

19   and PHWLV intended to induce the Plaintiff to act in reliance on the

20   representation and caused damages to the Plaintiff as a result of relying on

21   misrepresentation. The documents and false statements were used to

22   undermine the Plaintiff's positions. Caesars Entertainment Corporation and

23

24

PHWLV acted with malice in an attempt to cause unnecessary damage to the Plaintiff and her family.

14. Defendants Caesars Entertainment Corporation and PHWLV have been guilty of intentional tort, consisting of fraud, misrepresentation, and malice, and Mrs. Peruzar is entitled to punitive or exemplary damages, as set forth herein.

15. As a proximate result of the Defendants' outrageous and extreme conduct, Mrs. Peruzar has suffered damages in excess of $15,000, the exact amount to be set forth at trial on this matter.

16. As a direct and proximate result of the Defendants' actions, Mrs. Peruzar is entitled to not only general and compensatory damages, but also punitive or exemplary damages pursuant to NRS 42.005 for the fraud, malice, misrepresentation, and reckless disregard for Mrs. Peruzar, all proximately caused by Caesars Entertainment Corporation and PHWLV.

17. Mrs. Peruzar is entitled to an award for her reasonable fees and costs.

## SECOND CAUSE OF ACTION

### EMPLOYER DEFAMATION

18. Plaintiff hereby incorporate each and every preceding paragraph in this Complaint as if set forth fully herein.

19. In Unemployment documents and the Culinary Union hearings, Caesars Entertainment Corporation and PHWLV testified that they never spoke to the guest. Caesars Entertainment Corporation and PHWLV testified that the alleged complaint was actually entered into their system by an unknown front

desk employee, and documents show that this was altered and compromised in order to frame the Plaintiff.  As revealed in Unemployment and Culinary documents, Caesars Entertainment Corporation and PHWLV did not conduct an investigation. In Unemployment and Culinary documents/hearings Caesars Entertainment Corporation and PHWLV accused the Plaintiff of lying, theft, and a reckless disregard for company policy. The tip left to the Plaintiff and taken by the Plaintiff on October 31, 2017 did not and does not constitute any of these false and defamatory charges, and Caesars Entertainment Corporation and PHWLV failed to prove otherwise before making these false and defamatory statements.

20. Caesars Entertainment Corporation and PHWLV made false and defamatory statements against the Plaintiff by accusing the Plaintiff of lying and the crime of theft. They further acted with malice and complete disregard for the Plaintiff and her family by committing fraud to frame the Plaintiff of theft (as described in the first cause of action). Unprivileged publication of these false and defamatory statements were published to third parties. The false and defamatory statements led to the Plaintiff's termination, denial of unemployment benefits, and an ongoing Culinary Union dispute (Caesars Entertainment Corporation and PHWLV has prevented the Plaintiff from reinstatement of her job, backpay, and/or a payout). The false and defamatory statements also led to emotional distress as detailed in the third cause of action.

21. Defendants Caesars Entertainment Corporation and PHWLV has been guilty of defamation and Mrs. Peruzar is entitled to punitive or exemplary damages, as set forth herein.

22. As a proximate result of Defendants' actions, Mrs. Peruzar has suffered damages in excess of $15,000, the exact amount to be proven at trial on this matter.

23. As a direct and proximate result of Defendant's actions, Mrs. Peruzar is entitled to not only general and compensatory damages, but also punitive or exemplary damages pursuant to NRS 42.005 for the defamation and reckless disregard for Mrs. Peruzar's character/reputation and pursuit of relief, all proximately caused by Caesars Entertainment Corporation and PHWLV.

24. Mrs. Peruzar is entitled to an award of her reasonable fees and costs.

### THIRD CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

25. Plaintiff hereby incorporates each and every preceding paragraph in this Complaint as if set forth fully herein.

26. The Defendants made false and defamatory statements about the Plaintiff.

27. The Defendants' conduct was extreme and outrageous with either the intention of, or reckless disregard for, causing emotional distress not only to the Plaintiff, but to her husband and two children (one of which was hospitalized due to this incident), as set forth herein.

28. As a proximate result of the Defendants' outrageous and extreme conduct, Mrs. Peruzar has suffered damages in excess of $15,000, the exact amount to be proven at trial on this matter.

29. As a direct and proximate results of Defendants' actions, Mrs. Peruzar is entitled to not only general and compensatory damages, but also punitive or exemplary damages pursuant to NRS 42.005 for the fraud or malice, express or implied, and wanton and reckless disregard for Mrs. Peruzar, all proximately caused by Caesars Entertainment Corporation and PHWLV.

30. Mrs. Peruzar is entitled to an award of her reasonable fees and costs.

## FOURTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

1. Plaintiff hereby incorporates each and every preceding paragraph in this complaint as if set forth fully herein.

2. Wherefore, Plaintiff request that this Court grant the following relief:

   A. Judgment, for Plaintiff, for general and compensatory damages against Defendants in excess of $15,000, the exact amount to be determined at trial in this matter.

   B. An award of punitive or exemplary damages against Defendants for Plaintiff.

   C. An award of Plaintiff's reasonable fees and costs incurred in this matter.

   D. For interest at the statutory rate; and

1   E. For any other relief the Court deems just or necessary under the

2   circumstances.

3   **DEMAND FOR JURY TRIAL**

4   Pursuant to NRCP Rule 38, Plaintiff demands trial by jury in this action of all

5   issues so triable.

6   DATED this __5__ day of November, 2018

7

8   By:_____

9   ANNECER PERUZAR
    9748 CANYON LANDING AVE.
10  LAS VEGAS, NV 89166
    702-809-0988

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT G-LETTER AND DISTRIBUTION OF CONFIDENTIAL SETTLEMENT



# FENNEMORE CRAIG
## ATTORNEYS

Shannon S. Pierce
spierce@fclaw.com

300 E. Second Street, Suite 1510
Reno, NV  89501
PH (775) 788-2260 | FX (775) 788-2279
fennemorecraig.com

March 1, 2019

**VIA US MAIL**

Jerome R. Bowen, Esq.
Brandon J. Trout, Esq.
Bowen Law Offices
9960 W. Cheyenne Ave. Suite 205
Las Vegas, NV 89129

   Re: <u>Peruzar v. Caesars Entertainment Corporation, et al.</u>

Dear Mr. Trout:

  Please find the enclosed settlement agreement and lawsuit filed against Ms. Smith (full name is Latonia Smith). She has issued threats in the past and is known to stalk and harass others. This has already been relayed to the attorneys, employees, and management at Fennemore Craig and defendants CEC and PHWLV.

  Please be advised that we do consider her a danger and will be addressing our previous issues with her in this litigation as well.

  Thank you.

       Sincerely,

       FENNEMORE CRAIG, P.C.

       Shannon S. Pierce

SPIE



RECEIVED
MAR 04 2019

DS0R/037641 0LS3
LAW OFFICES
**FENNEMORE CRAIG, P.C.**
300 E. SECOND STREET
SUITE 1510
RENO, NV 89501

To:

Jerome R. Bowen, Esq.
Brandon J. Trout, Esq.
Bowen Law Offices
9960 W. Cheyenne Ave., Suite 250
Las Vegas, NV 89129

UNITED STATES POSTAGE
PITNEY BOWES

02 1P          $ 001.150
0000901149   MAR 01 2019
MAILED FROM ZIP CODE 89501



DSOR/037641.0153
LAW OFFICES

# FENNEMORE CRAIG, P.C.

300 E. SECOND STREET
SUITE 1510
RENO, NV 89501

*To:*

Jerom
Brandon
Bowen Law Offices
9960 W. Cheyenne Ave., Suite 250
Las Vegas, NV 89129

# EXHIBIT H
# DECLARATION OF
# ANNECER PERUZAR

## DECLARATION OF ANNECER PERUZAR IN SUPPORT OF LATONIA SMITH

1. I, ANNECER PERUZAR, hereby swear under the penalty of perjury and the laws of the State of Nevada that the assertions of this Declaration are true.
2. On April 17, 2019, Latonia Smith accompanied me to a hearing concerning a civil case in the district court.
3. At approximately 9:00 A.M., a hearing was held on the fifth floor.
4. After the hearing, and following behind Latonia Smith, I left the hearing.
5. Latonia Smith was waiting by the elevator on the fifth floor.
6. Immediately, Ethan Thomas and Shannon Pierce began harassing Latonia Smith, who had on her Airpods throughout her time at the court.
7. Ms. Shannon Pierce first mentioned that she was upset about an affidavit that was submitted in the district court civil case.
8. When Latonia Smith ignored her, both Ethan Thomas and Shannon Pierce became aggressive.
9. Ethan Thomas and Shannon Pierce issued a threat stating that myself and Latonia Smith "would not see the end of the case," and threatened to punch Latonia Smith in the face.
10. Ethan Thomas and Shannon Pierce called Latonia Smith a schizophrenic. This was not the first incident in which Shannon Pierce had called Latonia Smith a schizophrenic and had harassed her. Ms. Pierce also harassed Latonia Smith outside of an a conference in December and called Ms. Smith a schizophrenic approximately three (3) weeks prior to the April 17, 2019 hearing.
11. Latonia Smith continued to ignore Shannon Pierce and Ethan Thomas, and I immediately urged her to take the stairs to the first floor with me.
12. Latonia Smith refused stating that she would not let them intimidate her and stating that she would not be taking a different route to the first floor.

13.     I was upset due to the situation and turned to take the stairs, however, I immediately contacted Latonia Smith using the Apple Watch feature "walkie talkie."

14.     Latonia Smith and myself were talking about the statements made by Ethan Thomas and Shannon Pierce, including further comments that were made after I turned to take the stairs.

15.     Mr. Thomas and Ms. Pierce could be heard calling Latonia Smith a racial slur and continuing to make nasty comments.

16.     Still on walkie talkie, I arrived on the first floor shortly after Latonia Smith who was waiting on the first floor (unfortunately, I arrived at the same time Ms. Pierce and Mr. Thomas arrived).

17.     When Latonia Smith turned to meet up with me, Ethan Thomas and Shannon Pierce started making a commotion, yelling that Latonia Smith was threatening them. I was in close proximity when they both started yelling and contrary to the commotion/accusations Ethan Thomas and Shannon Pierce were making in front of a crowd of people, Latonia Smith did not issue any threats. Even a nearby officer dismissed Mr. Thomas and Ms. Pierce.

18.     Latonia Smith turned towards them, as well as myself and I heard Latonia Smith state to Ethan Thomas and Shannon Pierce that she never issued any threats. There were also other crowds of people on the first floor along with several officers (none of whom felt the need to get a report or arrest Ms. Smith) further supporting the fact that Ms. Smith never threatened Thomas or Pierce and that Thomas and Pierce were attempting to cause a commotion to have Ms. Smith arrested by issuing defamatory statements.

19.     When Latonia Smith continued quickly walking towards the exit, obviously now upset due to being (1) harassed by Thomas and Pierce on the fifth floor, (2) being called racial slurs and derogatory names, and (3) having applicants attempt to make a

scene on the first floor to have Ms. Smith arrested, I walked up behind and we both continued exiting the building.

20.    The several actions taken immediately after this date, were planned in advance by Ethan Thomas and Shannon Pierce, illustrating their goal to (1) continue harassing Ms. Smith and enacting their retaliation dating from 2017 in which Fennemore Craig and Caesars were involved as well and which ended unsuccessfully for them (2) cause maximum damage to Ms. Smith by conspiring to file TPOs and making up further allegations (3) intimidate Ms. Smith as a witness in the district court civil case (which defendants also inserted her into) (4) further cause annoyance and retaliate against myself.

21.    There were never any threats issued to Pierce and Thomas; the only threats issued came from them.

22.    Latonia Smith has never stalked, harassed, or aggravatedly stalked anyone as Fennemore Craig and Caesars have been alleging for two years. In fact, Ethan Thomas only accompanied Ms. Pierce on April 17, 2019 to target Ms. Smith; this was the first time myself and Latonia Smith had seen him.

23.    Associates of Caesars Entertainment and Fennemore Craig have continued harassing my family in recent previous weeks by sending individuals to my home to issue threats and stalk my family, continuing the same harassment pattern from 2017 in which community security had to be notified.

Dated this 4th day of August 2019

_____
Annecer Peruzar

# EXHIBIT I-
# BAN LETTER



**CAESARS**
**ENTERTAINMENT**®

May 3, 2019

<u>**Via Certified Mail, Return Receipt Requested, U.S. Mail and Email**</u>
Ms. Latonia Smith
9748 Canyon Landing Avenue
Las Vegas, NV 89166
(702) 521-3522
LTS0294@gmail.com

Dear Ms. Smith:

This letter is to inform you that the management of Caesars Entertainment Corporation and its affiliates and subsidiaries (collectively referred to hereinafter as "*Caesars*") has determined that you recently engaged in conduct that Caesars views as inappropriate. As a result, your presence is no longer desired upon the premises of any Caesars property, and you are no longer welcome at any Caesars property.

To be clear, your exclusion from Caesars applies to all properties operated under the following brand names: Bally's (except Bally's Tunica), Bluegrass Downs, Caesars, The Cromwell, Flamingo, Harrah's, Harveys, Horseshoe, Hoosier Park, Indiana Grand, Hot Spot Oasis, Paris Las Vegas, Planet Hollywood Resort & Casino, Rio All Suite Hotel & Casino, The Linq Hotel & Casino and Tunica Roadhouse, and all other properties that are currently or in the future owned, operated or managed by Caesars. Please be advised that if you are found at any of the aforementioned properties, management will not hesitate to take any and all steps necessary to effectuate your removal from the property, as well as pursuing all other legal rights and remedies it has under law. Further, should your presence at any Caesars property go undetected in the future, any money you win through gaming, including jackpots, may be forfeited, except in Nevada or any other state where this is prohibited by law.

In addition, you are not eligible for membership in the Caesars Rewards® program, and may not earn Reward Credits at any of our properties or through participation in any Caesars Rewards partner program (*e.g.*, Caesars Rewards Visa®). Please be advised that if you are found to have joined Caesars Rewards, your membership shall terminate pursuant to the Caesars Rewards Rules and Regulations (caesars.com/total-rewards/total-rewards-rules-regs), and you will not be eligible to redeem any of your accrued Reward Credits or use any other Caesars Rewards benefits, including Caesars Rewards offers relating to gaming, dining, lodging or other services. If you attempt to use any Caesars Rewards benefits or attempt to use another person's Caesars Rewards account, we reserve the right to take any action and pursue any legal remedies available to us.

This letter is not intended to be a waiver of any rights or remedies of Caesars, all of which are expressly reserved. In particular, this letter shall not waive or otherwise impact your liability for any outstanding obligations owed to Caesars. Thank you for your attention to this matter.

Sincerely,

**Caesars Management**

# EXHIBIT J-
# SECOND AMENDED
# COMPLAINT

**ACOM**
LATONIA SMITH
9748 CANYON LANDING AVE
LAS VEGAS NV 89166
702-521-3522
LTS0294@GMAIL.COM
PLAINTIFF IN PROPER PERSON

DISTRICT COURT

CLARK COUNTY, NEVADA

LATONIA SMITH,

               Plaintiff(s),

        -vs-

CAESARS ENTERTAINMENT

CORPORATION, a Delaware corporation;

PHWLV, LLC d/b/a PLANET HOLLYWOOD

RESORT AND CASINO, a Nevada limited

liability company; SHANNON PIERCE;

ETHAN THOMAS

               Defendant(s).

CASE NO.A-19-793549-C

DEPT. NO. 30

## SECOND AMENDED COMPLAINT AND JURY DEMAND

### ARBITRATION EXEMPT
**(Amount in Controversy Exceeds $1,000,000)**

NOW COMES Plaintiff Latonia Smith, an individual ("Ms. Smith"), states her

Complaint against Defendants as follows:

### INTRODUCTION

1.  Since November 2017, Defendants Planet Hollywood and Caesars

    Entertainment have been on a hate-filled path of retaliation, engulfing the Plaintiff

in their goal to inflict maximum damage on Annecer Peruzar (Plaintiff's mother) and her family.

2. Over the course of two years, defendants, Caesars Entertainment and PHWLV, aided by Fennemore Craig, have continually accused the Plaintiff of crimes including but not limited to sending threatening messages to themselves and their employees, harassment, and stalking, due to their hatred of the Plaintiff's mother (Annecer Peruzar).

3. Defendants singled the Plaintiff out and began spreading these false accusations to third parties, namely other employees at Planet Hollywood and Caesars Entertainment and Teri Pringle. The defendants through their current counsel in another lawsuit, Shannon Pierce, continued spreading these false accusations to third parties including but not limited to Brandon Trout, Wade Beavers, Jerome Bowen, Ethan Thomas, Shawna Braselton.

4. Ms. Smith has/had no connections to any of these parties through litigation when these false accusations were being spread.

5. When the Plaintiff continually relayed that she had no idea why the defendants were making such accusations and warned them to stop, the defendants continued spreading the false accusations ramping up their efforts.

6. Due to the Plaintiff being the daughter of Annecer Peruzar, the defendants had no regard for the Plaintiff because their only goal was to retaliate against Mrs. Peruzar.

7. The defendants used the false accusations that they made against Mrs. Peruzar's daughter to further fire Mrs. Peruzar in retaliation.

8. This lawsuit is brought against the defendants to seek legal redress for their intentional, reckless, and malicious attack on the Plaintiff, which has caused permanent damage to her life and reputation.

9.  The Plaintiff does not have a criminal history, graduated third in her high school class, and recently graduated with a bachelor's degree in Biochemistry.

10. The Plaintiff is preparing for medical school and there is no doubt that the harm inflicted by the defendants in their emotionally-filled need to "get back" at the Plaintiff's mother has caused permanent damage to her reputation.

11. The defendants bullied the innocent daughter of a former employee, Annecer Peruzar, with an absolute disregard for the pain and destruction that their attacks would cause and due to their hate of African Americans in general.

12. After the filing of the initial lawsuit, defendants continued targeting the Plaintiff due to her race and their issues with the Plaintiff's mother. Defendants Shannon Pierce and Ethan Thomas went on to harass the Plaintiff by filing several baseless court applications for the Plaintiff to appear at hearings based on retaliatory and untruthful accusations. Defendants Caesars Entertainment/PHWLV, in violation of NRS 651 and U.S. Law banned Ms. Smith from all current and future properties due to her race, shortly after the lawsuit was served. Ms. Smith has not gone to any Caesars properties and the ban only further displays the hatred towards Ms. Smith due to her being African American.

13. This country and our society have been a pillar of equality, and countless leaders have fought, and are still fighting, to eradicate the hate found within pockets of our communities. Every individual has a right to be respected regardless of the color of their skin.

14. The defendants must be dealt with in the same manner all bullies are dealt with and that is to hold the bully fully accountable for their wrongdoing in a manner which effectively deters the bully from again engaging in bullying. In a civil lawsuit, punishment and deterrence is found in awarding money damages to the victim and target of the bully.

15. In order to fully compensate Ms. Smith for her damages and to punish, deter, and teach the defendants a lesson that they will remember, this action seeks money damages in excess of One Hundred Million Dollars ($100,000,000.00).

## FACTS OF THE CASE

**Background**

16. Mrs. Peruzar (Plaintiff's "mother") was employed at Planet Hollywood from November 19, 2012 to November 15, 2017 as a Guest Room Attendant (GRA).

17. Guest Room Attendants at Planet Hollywood receive tips in many different forms and amounts.

18. At the time of Mrs. Peruzar's employment, Planet Hollywood did not have tip policies nor tip envelopes, leaving it up to Guest Room Attendants to decipher what constituted a tip from a guest.

19. Guest Tomas Pina stayed at Planet Hollywood from October 28, 2017 or October 29, 2017 to November 2, 2017.

20. Mrs. Peruzar was suspended by Planet Hollywood on November 5, 2017 and terminated by Planet Hollywood on November 15, 2017 for an unrelated guest complaint.

21. Planet Hollywood suspended and terminated Mrs. Peruzar for theft (of a tip) and gross willful misconduct without any evidence, based on the fact that she was African American, and based on the false accusations that defendants made against her daughter. Shortly afterward, defendants Caesars Entertainment and Planet Hollywood terminated another employee for theft (of a tip).

22. Defendants Planet Hollywood and Caesars Entertainment spread the news of these incidents throughout their own housekeeping departments and to several third parties.

**Messages Sent to Defendants PHWLV and Caesars Under Various Aliases
Created by What Could Have Only Been Themselves or Other Employees**

23. During the suspension of Mrs. Peruzar, it is presumed that defendants Planet
Hollywood and Caesars Entertainment started receiving hateful messages from
either themselves or upset employees under the guise of various aliases
including aliases pretending to be the "children of Mrs. Peruzar" (this is also
obvious as one of the aliases failed to know exactly how many years Mrs.
Peruzar had been working at Planet Hollywood).

24. Although it was evident that neither Latonia Smith nor Shaiquan Smith sent any
of these messages, the defendants immediately began accusing Mrs. Peruzar's
children of crimes to several third parties as if the defendants already had a plan
set out to do so.

25. When defendants were put on notice to cease their baseless accusations, they
continued on finding an absolute disregard for Mrs. Peruzar's family.

26. With the situation spiraling out of control, Plaintiff, through her personal
Facebook profile, wrote to the CEO of Caesars Entertainment asking for the
matters concerning Mrs. Peruzar and the false accusations being made to be
looked into more closely.

27. The letter did not contain any threats and was, instead, the attempt of a
responsible citizen (the Plaintiff) to reach out to what seemed to be a leader in
the Las Vegas community.

28. Instead, on their hate-filled agenda, the defendants Planet Hollywood and
Caesars Entertainment used Plaintiff's message to the CEO, sent from her
personal Facebook account, as an excuse to attach all of the messages that they
had been receiving to the Plaintiff.

29. Just as the defendants saw little regard for Mrs. Peruzar, jumping to the conclusion that Mrs. Peruzar had committed theft and inflicting permanent harm, the defendants saw little regard for the Plaintiff, jumping to conclusions that have inflicted permanent harm on the Plaintiff.

### THE RETALIATORY LAWSUIT FILED AGAINST THE PLAINTIFF

30. On March 15, 2018 and March 19, 2018, defendants Planet Hollywood and Caesars Entertainment filed a lawsuit and temporary protective order, steeped in malice and retaliation, against the Plaintiff. The defendants' (Planet Hollywood and Caesars Entertainment) only basis for attaching the Plaintiff to the lawsuit was that the Plaintiff sent a personal, non-threatening letter to the CEO of Caesars Entertainment in the hopes that matters would be looked into more closely.

31. Of course, defendants Caesars Entertainment and Planet Hollywood had no idea who was sending these messages before falsely accusing the Plaintiff as being the culprit.

32. The sham lawsuit filed by defendants Caesars Entertainment and Planet Hollywood is further evidence that the defendants had no valid basis for including the Plaintiff (except for the hate of the Plaintiff's mother and their motive of retaliation), as defendants added "DOE" defendants 1-50 alleging these "DOE" individuals to be the persons sending messages.

33. Instead of going through a long and baseless litigation that would further cause more distress to the Plaintiff and due to the fact that defendants could not prove any of their false allegations against Ms. Smith, the defendants, Planet Hollywood and Caesars Entertainment, and Ms. Smith entered into a "confidential" settlement agreement dismissing all claims against the Plaintiff.

34. Despite the settlement, the defendants have continued to assert these false allegations against the Plaintiff claiming that she is "guilty of all assertions made in the dismissed lawsuit," and distributing the confidential settlement to individual and unrelated third parties.

**SHANNON PIERCE CONTINUES THE FALSE ALLEGATIONS AGAINST THE PLAINTIFF IN FURTHER RETALIATION AND MALICE**

35. Shannon Pierce is an attorney for defendants Caesars Entertainment and Planet Hollywood in an ongoing lawsuit filed by the Plaintiff's mother (Annecer Peruzar). In her attempt to provoke the Plaintiff and expose the confidential settlement agreement (for the purposes of causing further harm to the Plaintiff and retaliating against Annecer Peruzar), Shannon Pierce began taunting the Plaintiff at several proceedings. As the Plaintiff waited outside for her mother at ECC, Shannon Pierce spotted the Plaintiff and derogatorily referred to the Plaintiff as "Smith" (as if the Plaintiff was just a dog on the street), further stating in a condescending tone, "it's nice to see you Smith." After a public proceeding that the Plaintiff attended with her mother on April 17, 2019, Shannon Pierce and her associate (Ethan Thomas) began making derogatory remarks and threats towards the Plaintiff, as she waited for an elevator, due to her dislike of an affidavit that the Plaintiff submitted to the court testifying of an isolated incident in her mother's case. Pierce stated that she was angry about the affidavit filed by the Plaintiff. Pierce and her associate Ethan Thomas carried on telling the Plaintiff that she was a "nigga." They both continued on stating, "you won't make it to see the end of the case because all our defendants have to do is call in an order to have you and your mom taken out.....'niggas' don't win." Pierce and her associate then called the Plaintiff a schizophrenic and threatened to punch the Plaintiff in the face stating, "maybe your big lying nose will become smaller."

36. Shannon Pierce and her associate Ethan Thomas despicable conduct as attorneys was all in an attempt to provoke the Plaintiff who had her Air pods in and pretended not to hear Shannon Pierce and her associate.

37. When Shannon Pierce found that her attempts were not working, she recorded part of a private conversation that the Plaintiff was having with her mother.

38. The Plaintiff was communicating with her mother about the despicable words that came from the mouths of Shannon Pierce and her associate.

39. Along with previously disclosing the confidential settlement to (including but not limited to) Ethan Thomas, Brandon Trout, Jerome Bowen, Shawna Braselton, and Wade Beavers, Shannon Pierce used this moment as an opportunity to falsely accuse the Plaintiff of issuing the threats that she and her associate issued, and filed the confidential settlement publicly with the court. Defendants then maliciously moved the court for an emergency order to exclude Ms. Smith from attending public proceedings with her mother and both Shannon Pierce and Ethan Thomas filed a malicious application for a protective order with the Las Vegas Justice Court as their defendants have done in the past (the pattern is clear).

40. Shannon Pierce's goal of finding any excuse to disclose the confidential settlement agreement in the hopes of retaliating against Mrs. Annecer Peruzar only illustrates the depths that the defendants (and their associates) are willing to go in order to cause harm and destruction.

## MALICIOUS USE OF PLAINTIFF'S MEDICAL RECORDS

41. Defendants maliciously used Ms. Smith's medical records disclosed as part of an ongoing lawsuit to further their agenda of retaliation and hate. The Plaintiff's medical records were isolated to an instance of time—November 17, 2017—

when defendants Planet Hollywood and Caesars Entertainment terminated Annecer Peruzar and spread defaming accusations about the Plaintiff.

42. The Plaintiff's mother, Annecer Peruzar, included the medical records to illustrate the great distress that her daughter was under due to witnessing her very own distress.

43. Defendants maliciously used the Plaintiff's medical records to somehow, falsely, indicate that the Plaintiff had issued threats to Shannon Pierce and her associate further perpetuating the negative stigma around those in our society who seek mental health help.

44. The actions of the defendants were reckless and beyond all levels of human decency.

45. As a responsible citizen, Ms. Smith sought help for the symptoms that she was experiencing on November 17, 2017 due to the actions of the defendants Planet Hollywood and Caesars Entertainment.

46. The defendants' continual regurgitation of the issues has continued and has expanded on the harm caused to the Plaintiff.

47. Defendants must be held accountable for their actions.

**THE TRUTH IS REVEALED**

48. Despite the defendants accusing Annecer Peruzar of committing a crime stemming from an unrelated guest complaint, it has been found that this is not true.

49. The defendants purposefully sought the termination of Annecer Peruzar due to her race and in retaliation (false accusations made against her daughter, the Plaintiff).

50. As a result, the defendants have caused great harm to the Plaintiff.

**PARTIES, JURISDICTION, AND VENUE**

51. At all relevant times Ms. Smith was and is a resident of Clark County, Nevada.

52. The amount in controversy greatly exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests and costs, as required to sustain subject-matter jurisdiction in this Court.

53. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(c).

54. Caesars is one of the largest hotels and casino operators with several subsidiaries. The defendants transact business in the State of Nevada, and committed the tortious acts identified herein in the State of Nevada.

55. The defendants published the false statements identified herein in the State of Nevada.

56. The defendants directed their unlawful and bullying conduct at Ms. Smith, a citizen of Nevada.

57. Ms. Smith suffered permanent reputational and emotional harm in this District.

58. There is a reasonable and direct nexus between the defendants' tortious conduct and the harm suffered by Ms. Smith.

59. The defendants are subject to the jurisdiction of this Court pursuant to Article 6 Section 6 of the Nevada Constitution, NRS 3.020, and NRS 3.040.

60. Venus is proper in this District pursuant to 28 U.S.C. § 1391 (b) because the defendants are subject to personal jurisdiction in this District and/or a substantial part of the events giving rise to this claim occurred in this District, including publication and injury.

**CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

61. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 60 of this Complaint as if fully restated herein.

62. The Plaintiff was a witness to the termination and distress of her mother, Mrs. Anneer Peruzar on November 15, 2017.

63. In addition, during the suspension of Mrs. Anneer Peruzar, defendants Planet Hollywood and Caesars Entertainment began falsely relaying to third parties that the Plaintiff was committing crimes and still continues to do so presently.

64. This led the Plaintiff to the edge, causing the Plaintiff to feel suicidal and homicidal on November 17, 2017.

65. The Plaintiff reached out on her own behalf to seek help for her symptoms, which were alleviated at the time of her discharge on November 18, 2017.

66. Due to the defendants' ongoing assertions, including those made by Shannon Pierce (as referenced above) the Plaintiff has continually sought mental health treatment.

67. The defendants' conduct, in falsely/maliciously accusing the Plaintiff of crimes and falsely/maliciously firing Mrs. Anneer Peruzar, was extreme and outrageous with the intention of retaliating against Mrs. Anneer Peruzar.

68. Defendants' distribution of the confidential settlement agreement was also extreme and outrageous conduct as all parties agreed that such distribution would cause irreparable harm.

69. As a result of defendants' reckless conduct Ms. Smith has suffered severe emotional distress to be proven at trial on this matter.

70. Ms. Smith is allowed to collect for distress when it results from extreme and outrageous conduct, and the defendants' conduct in this matter warrant such relief.

**CAUSE OF ACTION FOR DEFAMATION/DEFAMATION PER SE**

71. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 70 of this Complaint as if fully restated herein.

72. The defendants PHWLV and CAESARS ENTERTAINMENT (includes Ethan Thomas as defendant) made unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing her of the crimes of stalking, harassment, aggravated stalking, and sending threatening/disparaging messages.

73. By and through their counsel for a separate case, defendants made unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing her of the crimes of stalking, harassment, aggravated stalking, calling her a "nigga," and calling her "schizophrenic," in the presence of third parties.

74. The defendants SHANNON PIERCE made unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing her of the crimes of stalking, harassment, aggravated stalking, calling her a "nigga," and calling her "schizophrenic."

75. These false statements made by the defendants are defaming on its face as they have accused Ms. Smith of committing crimes under Nevada laws without a sufficient basis for doing so. In addition, defendants SHANNON PIERCE has called the Plaintiff a word so degrading and derogatory in our society that it would be considered defamation per se.

76. Defendants have caused great harm to Ms. Smith to be proven at trial in this matter.

## CAUSE OF ACTION FOR SLANDER/SLANDER PER SE

77. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 76 of this Complaint as if fully restated herein.

78. The defendants PHWLV and CAESARS ENTERTAINMENT made unprivileged false and defamatory statements about Ms. Smith including but not limited to

accusing her of the crimes of stalking, harassment, aggravated stalking, and sending threatening/disparaging messages.

79. By and through their counsel for a separate case, defendants made unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing her of the crimes of stalking, harassment, aggravated stalking, calling her a "nigga," and calling her "schizophrenic."

80. The defendants SHANNON PIERCE made unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing her of the crimes of stalking, harassment, aggravated stalking, calling her a "nigga," and calling her "schizophrenic."

81. Defendants' actions are slanderous on its face as they have accused Ms. Smith of committing crimes under Nevada laws without a sufficient basis for doing so. In addition, defendants SHANNON PIERCE has called the Plaintiff a word so degrading and derogatory in our society that it would be considered defamation per se.

82. Defendants have caused great harm to Ms. Smith to be proven at trial in this matter.

## CAUSE OF ACTION FOR ABUSE OF PROCESS

83. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 82 of this Complaint as if fully restated herein.

84. Defendants PHWLV and CAESARS ENTERTAINMENT committed abuse of process when they used the legal system as retaliation, filing baseless lawsuits against Ms. Smith.

85. Since defendants' goal was to "get back" at Mrs. Annecer Peruzar (Mrs. Peruzar had been filing complaints against the defendants consecutively), they used the Plaintiff as their vehicle for accomplishing that goal.

86. After spending several months accusing the Plaintiff of sending messages and being warned to stop their baseless accusations as explained above, Defendants PHWLV and CAESARS ENTERTAINMENT retaliated again filing lawsuits and TPOs against the Plaintiff falsely accusing her of crimes that lacked any substantial evidence to make such conclusions.

87. The defendants SHANNON PIERCE carrying on with the goal of defendants PHWLV and CAESARS ENTERTAINMENT to inflict maximum damage on Mrs. Annecer Peruzar filed an application of a protective order against the Plaintiff with the sole purpose of "getting back" at Mrs. Annecer Peruzar, disclosing confidential settlement documents between the Plaintiff and defendants PHWLV and Caesars Entertainment, and attempting to stop the Plaintiff from attending public proceedings with Mrs. Annecer Peruzar in a further attempt to harass, intimidate, and defame the Plaintiff. On Ms. Pierce's command, CEC/PHWLV (including Thomas) and associates of Fennemore Craig continued the abusive TPO filings.

88. The defendants used Ms. Smith as collateral in their goal to further harm Mrs. Annecer Peruzar and her family, causing great harm to Ms. Smith to be proven at trial in this matter.

## CAUSE OF ACTION FOR MALICIOUS PROSECUTION

89. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 88 of this Complaint as if fully restated herein.

90. Defendants PHWLV and CAESARS ENTERTAINMENT committed malicious prosecution when they used the legal system as retaliation, filing baseless lawsuits against Ms. Smith brought without probable cause, and causing them to be pursued to their legal end, which resulted in a denial of extended orders of a

criminal nature and which would have been placed in Ms. Smith's criminal background.

91. Since defendants' goal was to "get back" at Mrs. Annecer Peruzar (Mrs. Peruzar had been filing complaints against the defendants consecutively), they used the Plaintiff as their vehicle for accomplishing that goal.

92. After spending several months accusing the Plaintiff of sending messages and being warned to stop their baseless accusations as explained above, Defendants PHWLV and CAESARS ENTERTAINMENT filed lawsuits against the Plaintiff falsely accusing her of crimes that lacked any substantial evidence to make those conclusions.

93. Despite having the action dismissed, defendants PHWLV and CAESARS ENTERTAINMENT have continued to reassert the claims of the lawsuit to several third parties even breaching the confidential agreement by filing it publicly in an unrelated case and distributing it to several individual and unrelated third parties.

94. Shannon Pierce and Ethan Thomas committed malicious prosecution when they used the legal system as retaliation, filing a baseless application for a protective order against Ms. Smith further accusing Ms. Smith of the threats/insults that, in fact, they issued to Ms. Smith without probable cause, and causing them to be pursued to their legal end, which resulted in a denial of extended orders of a criminal nature which would have been placed in Ms. Smith's criminal background, and further instructing their associates to do the same.

95. The defendants used Ms. Smith as collateral in their goal to further harm Mrs. Annecer Peruzar and her family, causing great harm to Ms. Smith to be proven at trial in this matter.

**CAUSE OF ACTION FOR VIOLATION OF 42 U.S. CODE § 2000a. AND NRS 651 (SPECIFICALLY NRS 651.070 AND NRS 651.080); THIS CAUSE OF ACTION IS ALSO PURSUANT TO NRS 651.090**

96. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 95 of this Complaint as if fully restated herein.

97. On May 3, 2019, Defendants Caesars Entertainment (includes PHWLV as stated in the letter) sent a threatening notice to Ms. Smith's personal email banning Ms. Smith from all current and future properties.

98. The ban was issued, shortly after the filing of this lawsuit, due to Ms. Smith's race once again, in direct violation of federal and state law. The ban was in concert with defendants and Fennemore's plans to cause harm to Ms. Smith as will be seen in the proximity of dates on which each action occurred.

99. Ms. Smith has not been to any Caesars properties and the intents of the ban were clear: the defendants Caesars Entertainment do not want Ms. Smith, who is African American, to be allowed in an establishment that is fairly open to the public.

100.    Defendants actions have caused harm to Ms. Smith to be proven at trial in this matter.

**CAUSE OF ACTION FOR CIVIL CONSPIRACY**

101.    Ms. Smith reasserts and incorporates by reference paragraphs 1 through 100 of this Complaint as if fully restated herein.

102.    CEC/PHWLV (including Thomas) became involved in the plot to harass, defame, and intimidate Ms. Smith with their associates Fennemore Craig (includes Pierce), which included distributing the confidential settlement agreement, filing TPOs, and filing a baseless suit against Ms. Smith.

103.    Defendants and their associates intended to accomplish the unlawful goal of retaliating against Mrs. Peruzar and intimidating Ms. Smith as a witness.

104.    The defendants, upon agreement, accomplished their unlawful goal causing severe harm to Ms. Smith.

105.    The unfaithful and unlawful actions by defendants were deliberate leading directly to the damages sustained by Ms. Smith to be proven at trial on this matter.

## CAUSE OF ACTION FOR BREACH OF CONFIDENTIALITY

106.    Ms. Reasserts and incorporates by reference paragraphs 1 through 105 of this Complaint as if fully restated herein.

107.    Defendants expressly distributed a confidential settlement agreement to several individual and unrelated third parties in direct violation of the terms of the agreement.

108.    Defendants Shannon Pierce (in connection with Fennemore Craig) and Ethan Thomas and CEC/PHWLV further attached defaming letters to their distribution of the settlement to third parties.

## CAUSE OF ACTION FOR PERMANENT INJUNCTIVE RELIEF

109.    Ms. Smith reasserts and incorporates by reference paragraphs 1 through 108 of this Complaint as if fully restated herein.

110.    The defendants have not stopped their baseless accusations against Ms. Smith. The defendants have continued to cause Ms. Smith severe and permanent harm including but not limited to emotional harm and harm to her reputation.

111.    The defendants have also banned Ms. Smith from

112.    Ms. Smith is entitled to permanent injunctive relief against defendants banning them from continuing to make false and defamatory statements against

Ms. Smith and forcing them to remove the ban they placed on Ms. Smith in direct violation of NRS 651.

## MS. SMITH IS A PRIVATE FIGURE

113.    Ms. Smith is a private figure for the purposes of the defamation, libel, and slander claims, having lived her entire life outside of the public eye.

Prior to November 2017, Ms. Smith had no notoriety of any kind.

## THE DEFENDANTS PUBLISHED INTENTIONALLY AND WITH ACTUAL MALICE

114.    The defendants published false and defamatory accusations/statements with actual knowledge of their falsity and/or reckless disregard for the truth.

115.    As a large and powerful corporation with several subsidiaries, defendants PHWLV and CAESARS knew, but ignored the importance of verifying damaging, and in this case, incendiary accusations against Ms. Smith prior to making them.

116.    The actual malice of defendants is demonstrated by their utter and knowing disregard for the truth.

117.    The defendants' conduct demonstrates a purposeful avoidance of the truth in order to engage in retaliation.

118.    The defendants' actual malice is further evidenced by their failure to cease their false claims after entering into a confidential agreement (no longer confidential) with the Plaintiff.

119.    The defendants made the false and defamatory accusations with common law malice, including because they intended to retaliate against Mrs. Annecer Peruzar in harming her family.

## DAMAGES

120.    The defendants' conduct, including but not limited to defamation, was steeped in retaliation and racial malice.

121.    The defendants in an attempt to retaliate against Mrs. Annecer Peruzar, engaged in the intentional infliction of emotional distress on the Plaintiff including but not limited to accusing her of crimes that landed her in the hospital.

122.    The false and defamatory accusations, including but not limited to the confidential settlement agreement, was published to third parties.

123.    The false and defamatory accusations against Ms. Smith are defamatory per se, as they are libelous on their face without resort to additional facts, and subjected Ms. Smith to humiliation, contempt, embarrassment, and disgrace.

124.    As a direct and proximate result of the false and defamatory accusations, Ms. Smith suffered permanent harm to her reputation.

125.    As a direct and proximate result of the false and defamatory accusations, Ms. Smith suffered severe emotional distress.

126.    As a direct and proximate result of the false and defamatory accusations, Ms. Smith is forced to live her life in a constant state of concern regarding her reputation.

127.    Under NRS 42, Ms. Smith is entitled to compensatory and punitive damages.

128.    The defendants' actions were done with actual malice and common law malice, thereby entitling Ms. Smith to an award of punitive damages.

129.    The defendants' conduct was outrageous and willful, demonstrating that entire want of care that raises a conscious indifference to consequences.

130.    Ms. Smith is entitled to an award of punitive damages to punish the defendants and to deter them from repeating such egregiously unlawful misconduct in the future.

**WHEREFORE**, Ms. Smith respectfully prays:

(a) That judgment be entered against the defendants for substantial compensatory damages in an amount not less than Two Hundred and Fifty Million Dollars ($250,000,000) per defendant totaling One Billion Dollars ($1,000,000,000);

(b) That judgment be entered against the defendants for punitive damages in an amount not less than Three Hundred Million Dollars ($300,000,000) per defendant totaling One Point Two Billion Dollars ($1,200,000,000);

(c) That all costs of this action be taxed to the defendants;

(d) For interest at the statutory rate; and

(e) That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

## DEMAND FOR JURY TRIAL

Pursuant to NRCP 38, Ms. Smith demands trial by jury in this action of all issues so triable.

Respectfully submitted this 9th day of August 2019

**LATONIA SMITH**

LATONIA SMITH
LTS0294@GMAIL.COM

9748 CANYON LANDING AVE.
LAS VEGAS, NV 89166
TEL: 702-521-3522